(81 South. 378)

No. 23276.

HURRY v. HURRY.

(Nov. 4, 1918. On the Merits, March 3, 1919. Rehearing Denied March 31, 1919.)

*(Syllabus by Editorial Staff.)*

1. APPEAL AND ERROR ⊚═══392 — DEFECTIVE APPEAL BOND—MODE OF COMPLAINT—DISMISSAL FOR INSUFFICIENCY—STATUTE.

Under Act No. 112 of 1916, § 9, despite section 3, appellee in a divorce suit should have urged his complaint in relation to the insufficiency of appellant's appeal bond in the district court, should have had it served on appellant, and should have given her opportunity to correct the errors, or to furnish a new bond within two legal days after service of the complaint; and, appellee having failed so to do, the appeal cannot be dismissed on account of errors or omissions in appeal bond.

On the Merits.

2. DIVORCE ⊚═══13 — DESERTION — STATUTE —RETROACTIVE EFFECT.

Act No. 269 of 1916 gives a right to sue for divorce on the ground of 7 years' separation of the parties, though part or all the time had expired prior to the adoption of the statute.

3. CONSTITUTIONAL LAW ⊚═══305 — DIVORCE ⊚═══13 — "DUE PROCESS" — "LAW OF THE LAND."

Act No. 269 of 1916, providing a certain state of facts shall be basis for a suit for divorce, but relegating the parties to an action through the courts for a determination of the existence of such facts, as well as an application of the law, is not violative of the due process clause of Const. La. Bill of Rights, art. 2, or Const. U. S. Amend. 14, § 1; "due process" meaning the general law of the land, which hears before it condemns, proceeds on inquiry, and renders judgment only after trial (citing Words and Phrases, First and Second Series, Due Process of Law).

4. CONSTITUTIONAL LAW ⊚═══197 — BILL OF RIGHTS—EX POST FACTO LAW.

Act No. 269 of 1916, allowing one suing for divorce to avail himself of conditions which obtained prior to its passage, is not violative of Const. La. art. 166, or Const. U. S. art. 1, § 10, as an ex post facto law.

5. CONSTITUTIONAL LAW ⊚═══93(1), 153 — VESTED RIGHTS—OBLIGATION OF CONTRACTS —STATUTE.

In view of Civ. Code, arts. 86–90, dealing with marriage, Act No. 269 of 1916, stating grounds for divorce, leaves the wife's right to a settlement and division of community property and to claim alimony unimpaired, as provided by the Code, and is not violative of Const. La. art. 166, or Const. U. S. art. 1, § 10, as divesting vested rights or impairing contracts.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Law of the Land.]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit for divorce by Andrew Hurry against

Clara Hurry. From judgment for plaintiff, defendant appeals. Affirmed.

George B. Smart, of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

## On Motion to Dismiss the Appeal.

O'NIELL, J. The defendant was granted an appeal from a judgment of divorce, on her furnishing bond for $100. She and R. J. Derbes signed one of the printed forms used for appeal bonds, and filed it in the record without having inserted, in the blank spaces left for the purpose, the name of the surety, the amount of the obligation, the date of the bond, or the date of the judgment appealed from. Except that the name R. J. Derbes is written below that of the principal, where a surety should sign, there is no indication in the bond itself of the capacity in which he signed the instrument. Annexed to the bond, however, is the oath of the surety and the oath of the appellant that he, R. J. Derbes, the surety on the bond, is worth, over and above all his debts and obligations, in assets that can be subjected to levy under execution, more than $100, the amount for which he bound himself. The oaths are dated and conform with the requirements of section 4 of Act No. 112 of 1916, p. 242.

The appellee filed in this court a motion to dismiss the appeal for want of a valid appeal bond. The appellant then filed a motion, alleging that, pursuant to section 3 of Act No. 112 of 1916, she had filed a new appeal bond in the district court within two legal days after service of the motion to dismiss her appeal. She prayed for an order on the clerk of the district court to complete the record by sending up a copy of the new bond. The order was granted, and, in response, the clerk of the district court has furnished a copy of the new appeal bond. It is in due form, is for $100 and is signed by R. J. Derbes as surety.

[1] Whether we would have sustained an appeal on a bond as defective as is the one in this case, before the adoption of Act No. 112 of 1916, need not be decided now. The purpose of that act was, and its effect is, to save litigants from any serious consequence of errors or defects in bonds required in judicial proceedings. Section 8 declares that the statute shall apply to appeal bonds, as well as to the other bonds mentioned, and generally to any and every kind of bond that may be required by law or by any order of court in any judicial proceeding. And section 9 of the act declares that no appeal shall be dismissed on account of any error in the amount of the bond, or for any inaccuracy or omission in the bond, or for the insufficiency of any surety or sureties on the bond, until the party who furnished the bond shall have failed to correct the error, inaccuracy, or omission, or to furnish a supplemental or an additional bond or surety or sureties, as provided in the statute. The method provided in sections 2 and 3 of the statute, for correcting errors in bonds, or furnishing new or additional bonds or sureties, is that a litigant who has furnished an incorrect or insufficient bond shall have the right to correct the error, or furnish a new or additional bond, in the court of original jurisdiction, at any time within two legal days after being served with a notice that the adverse party, or a party in interest, complains that the bond furnished is insufficient either in form or in substance. It is plain, therefore, that if an appellee or any party in interest has cause to complain of the form or sufficiency of an appeal bond, he should urge his complaint and have it served upon the appellant in the court of original jurisdiction, and allow the appellant the delay of two legal days for correcting the error or deficiency; for it cannot be said that the appellant has failed to correct an error in his appeal bond until he has had the opportunity which the law allows him for correct-

ing the error; and, unless the appellant has failed in that respect, the appeal should not be dismissed for any error or insufficiency in the appeal bond. The question of validity or sufficiency of appeal bonds in suits between individuals is not a matter of public interest.

We observe that section 3 of the statute referred to provides that a litigant desiring to furnish a supplemental or an additional bond shall have the right to do so at any time prior to judgment; hence the inference that no right is given to furnish a supplemental or an additional bond after judgment. But, with regard to appeal bonds, that provision of the law cannot apply to the judgment appealed from.

The methods adopted in this case, for correcting the defects in the first appeal bond or furnishing a new bond, were not in accord with the provisions of Act No. 112 of 1916. The appellee should have urged his complaint in the district court, should have had it served upon the appellant, and should have given the latter the opportunity to correct the errors or furnish a new bond within two legal days after service of the complaint. Under the circumstances, and by the terms of section 9 of Act No. 112 of 1916, the appeal cannot be dismissed on account of the errors or omissions complained of in the motion to dismiss.

The motion to dismiss the appeal is overruled.

PROVOSTY, J., absent on account of illness, takes no part.

## On the Merits.

DAWKINS, J. This is an appeal by the defendant wife from a judgment in favor of the plaintiff husband, based upon the provisions of Act No. 269 of 1916.

[2] The case was before us on a former occasion in an appeal from a decree of the lower court sustaining an exception of no cause of action. The argument made under the exception was that the act in question could not operate retrospectively, so as to permit a divorce upon conditions which had existed prior to its passage. In that instance, we reversed the judgment of the lower court, and held that the law does give the right to sue for a divorce upon the ground of 7 years' separation of the parties, notwithstanding the fact that a part or all of the time had expired prior to its adoption. Hurry v. Hurry, 141 La. 954, 76 South. 160. See, also, Hava v. Chavigny, 143 La. 365, 78 South. 594. We see no reason to change our views at this time.

The fact that plaintiff and defendant had not lived together for more than 12 years is not disputed. However, it is the contention of defendant that one spouse should not be permitted to desert the other, and otherwise violate the marriage obligations and then be allowed to use his or her own wrong as the basis of divorce.

It is further urged that the act in question violates article 2 of the Bill of Rights and article 166 of the state Constitution, as well as section 10 of article 1 and section 4 of the Fourteenth Amendment to the federal Constitution.

## Cause of Separation.

The record is practically silent on the question of what caused the separation and we cannot assume that the fault was that of the one any more than of the other. It will be time enough for us to determine, when a proper case is presented, whether we shall apply to suits brought under this act the equitable doctrine announced in the cases based upon the other grounds of divorce provided in the Code; i. e., that when the spouses are guilty of mutual outrages toward each other, the courts will not grant relief from the effects of their own wrongs.

We will now consider the constitutional questions in the order above mentioned.

### Does the Act of 1916 Violate the Due Process Clause of the State Constitution?

[3] No authorities have been cited on this point, and we are not altogether clear as to just what is meant by this contention. The statute provides that a certain state of facts shall be the basis of a suit for divorce, but relegates the parties to an action through the courts for a determination of the existence of such facts, as well as the application of the law thereto. The defendant in such a suit is given the right to be heard in the ordinary way. No fixed definition of the phrase "due process of law" can be given, but each case must be determined upon its own circumstances, and unless a party is deprived of some fundamental right under the general principles of law, it has no application. The definition most widely quoted and sanctioned in the jurisprudence of the country is that of Daniel Webster, used in the famous Dartmouth College Case, 17 U. S. (4 Wheat.) 518, 4 L. Ed. 629, to wit:

"By the law of the land [the equivalent of due process of law] is * * * clearly intended the general law; * * * which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." It means "that every citizen shall hold his life, liberty, property * * * under the protection of the general rules which govern society." Words and Phrases, vol. 3, p. 2232; In re Ross, 38 La. Ann. 533.

The statute in question applies to all persons of the same class alike, gives ample opportunity to be heard, and does not, in our opinion, violate the provision of the state Constitution referred to.

### Does the Act Violate Article 166 of the State, or Section 10, Article 1, of the Federal, Constitution?

[4] We shall discuss these provisions of the two Constitutions together, since they embrace largely the same general principles. It may be stated, without quoting these articles, that the contention of the defendant is that the act of the Legislature is an ex post facto law, impairs the obligations of contracts, and divests vested rights. In so far as the charge that it is ex post facto law concerns the fact that it allows the plaintiff to avail himself of conditions which obtained prior to its passage, we have already passed upon that issue in this identical case adversely to the defendant's contention. Hurry v. Hurry, 141 La. 954, 76 South. 160.

### Does the Act Divest Vested Rights, or Impair the Obligations of Contracts?

[5] A determination of these issues involves the discussion and interpretation of the marriage laws of this state.

The pertinent articles under the chapter of the Code dealing with marriage provide:

Art. 86. "The law considers marriage in no other view than as a civil contract."

Art. 87. "The laws prescribe:

"1. The manner of contracting and celebrating marriages;

"2. The legal effects and consequences of marriage;

"3. The manner in which marriage may be dissolved."

Art. 88. "Such marriages only are recognized by law as are contracted and solemnized according to the rules which it prescribes."

Art. 89. "Marriage is a contract intended in its origin to endure until death of one of the contracting parties; yet this contract may be dissolved before the death of either of the married persons, for causes determined by law."

Art. 90. "As the law considers marriage in no other view than that of a civil contract, it sanctions all those marriages where the parties, at the time of making them, were:

"1. Willing to contract;

"2. Able to contract;

"3. Did contract pursuant to the forms and solemnities prescribed by law."

Subsequent articles impose upon the spouses mutual rights and duties.

It may be said that article 86 declares marriage to be a civil contract, the obligations of which cannot be violated by any law passed subsequently to its celebration. How-

ever, similar expressions in the laws of other states have been construed as evidencing merely the intention of the legislator to remove marriage from the operation of religious or ecclesiastical law, and to make it subject to civil authority only. Wade v. Kalbfleisch, 58 N. Y. 282, 284, 17 Am. Rep. 250, cited approvingly in Maynard v. Hill, 125 U. S. 212, 8 Sup. Ct. 723, 31 L. Ed. 654. Marriage partakes of some of the elements of a private contract, but differs therefrom in many essentials. The consent of the parties is required, but it can only be contracted between a male and a female; the parties must be able to contract, not in the sense of having attained their majority, for a male of 14 and a female of 12 may marry under the law of this state; but they must not at the time be lawfully married to any one else, and must not be of those classes which the law prohibits from marrying, such as close relatives, persons of the black and white races, etc. Unlike other contracts, it can be made with but one person at a time, and cannot be dissolved by the consent of the parties. The right to regulate marriage and its effects is a part of the police power of the state, vested in the Legislature.

"It is also to be observed that, whilst marriage is often termed by text-writers and in decisions of courts a civil contract—generally to indicate that it must be founded upon the agreement of the parties, and does not require any religious ceremony for its solemnization—it is something more than a mere contract. The consent of the parties is of course essential to its existence, but when the contract to marry is executed by the marriage, a relation between the parties is created which they cannot change. Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society." Maynard v. Hill, 125 U. S. 210, 8 Sup. Ct. 729, 31 L. Ed. 654.

Further on, in the same case, the Supreme Court of the United States quotes approvingly from the case of Adams v. Palmer, 51 Me. 484, 485, as follows:

"It is not then a contract within the meaning of the clause of the Constitution which prohibits the impairing the obligation of contracts. It is rather a social relation like that of parent and child, the obligations of which arise not from the consent of concurring minds—but are the creation of the law itself; a relation the most important as affecting the happiness of individuals, the first step from barbarism to incipient civilization, the purest tie of social life, and the true basis of human progress."

We quote from Ruling Case Law, vol. 18, p. 386, subject, Marriage, as follows:

"Marriage is not a contract within the meaning of the prohibition of the federal Constitution against the impairments of contracts by legislation."

See, also, vol. 6, p. 344 (Const. Law); note to 84 Am. St. Rep. 449.

We have quoted and cited the above authorities for the purpose of showing that marriage is not a contract in the sense that laws affecting the relation are amenable to the provisions of the state and federal Constitutions against impairing obligations of contracts, or the divesting of vested rights, in so far as the duties and obligations of the spouses toward each other are concerned. But, even if this were not the law, the duty to support the wife, even after the dissolution of the marriage, under proper conditions, is still preserved in our law, notwithstanding the act of 1916. As we understand the contention of defendant, it is that the law otherwise imposes upon the husband the duty of supporting the wife, and to dissolve the marriage under the act of 1916 without preserving that right robs her of a substantial benefit given under the contract itself. However, article 160, C. C., provides:

"If the wife who has obtained the divorce has not sufficient means for her maintenance, the

court may allow her in its discretion, out of the property of her husband, alimony which shall not exceed one-third of his income.

"This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage."

The only condition imposed by this provision of the Code seems to be that the wife, herself, shall obtain the divorce, and it has been held that she may recover such alimony, even though a defendant, where she obtains the decree by reconvention. Landreaux v. Landreaux, 114 La. 528, 38 South. 442. Being one of the incidents of the settlement of the matrimonial community, it may also be recovered after the decree of separation has been pronounced. Suberville v. Adams, 46 La. Ann. 124, 14 South. 518. We, of course, express no opinion as to what the rights of the defendant in the case before us would be in event, after the finality of the judgment in this case, she should sue for alimony. She has not asked it herein, and, of course, it cannot be considered. We think the act of 1916 leaves the right to a settlement and division of community property and to claim alimony unimpaired as provided in the Code, whatever may be our ultimate conclusions on the right of a wife to claim alimony in a case like the one at bar, where the husband has obtained the divorce upon the provisions of the act, and when the wife is, herself, in no wise at fault.

### Fourteenth Amendment to United States Constitution.

What we have said above in regard to the provisions of article 2 of Bill of Rights of the state Constitution guaranteeing "due process of law" is equally applicable under the similar provisions of the Fourteenth Amendment to the federal Constitution.

For the reasons assigned, the judgment appealed from is affirmed at the cost of appellant.