On Rehearing.
MONROE, O. J.
The earnestness with which the learned counsel for defendant have contended that the court has erred in construing the statute under the authority of which this suit has been brought having led to a second consideration of the subject, the result will now be stated;
It is undisputed and indisputable that each of the states is vested with the power to determine the marital status of its own citizens.
“Marriage,” the Supreme Court of the United States has said, “as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature. That body prescribes the age at which the parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution. * * * Many causes may arise, physical, moral, and intellectual-such as the contracting by one of the parties of an incurable disease like leprosy, or confirmed insanity or hopeless idiocy, or a conviction of a felony — which would render the continuance of the marriage relation intolerable to the other party and productive of no possible benefit to society. When the object of the relation has been thus defeated, and no jurisdiction is vested in the judicial tribunals to grant a divorce, it is not perceived that any principle should prevent the Legislature from interfering and putting an end to the relation in the interest of the parties as well as of society.” Maynard v. Hill, 125 U. S. 206, 8 Sup. Ct. 726, 31 L. Ed. 657.
And. in the case thus cited it was held (quoting from the syllabus) that:
“1. The act of the legislative assembly of the territory of Oregon of the 22d of December, 1852, declaring the bonds of matrimony between David E. Maynard and his wife dissolved, was valid and effectual to divorce the parties.
“2. The granting of divorces is a rightful subject of legislation, when either of the parties divorced is, at the time, a resident within the territorial jurisdiction of the Legislature.
“3. The facts that no cause existed for the divorce, and that it was obtained without the knowledge of the wife, cannot affect the validity of the act.
“4. Marriage is not a contract within the meaning of the prohibition of the federal Constitution against the impairment of contracts by state legislation.”
The first of the Constitutions of this state which contained any restriction upon the power of the General Assembly to grant divorces was that of 1879, which declared:
“Art. 46. The General Assembly shall not pass any local or special law on the following specified objects: * * * Granting divorces.”
And that prohibition (the word “subjects” having been substituted for “objects”) has *149 been incorporated in the present Constitution, and the power of the state with respect to the marital status of its citizens, as thus restricted, is vested in its law-making department, which has specified certain causes and methods of procedure for, and by means of which, divorces may be granted by courts duly authorized to that effect; the latest of the causes so specified being that set forth in the Act No. 269 of 1916 here below quoted, which act, not being attacked as unconstitutional, and not being obnoxious, so far as we are informed, to any objection on that ground, is to be taken, for the purposes of the issue as here presented, as entirely competent legislation, and speaks for itself as being so entirely unambiguous as to admit of no other construction than that which its language plainly imports. It reads as follows:
“Section 1. * * * That when married persons have been living separate and apart for a period of seven years or more, either party to the marriage contract may sue, in the courts of the state of his or her residence, provided such residence shill have been continuous for the period of seven years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the spouses, during said period of seven years or more.
“Sec. 2. * * * That all laws, or parts of laws, contrary to, inconsistent with or in conflict with, this law, be, and they are hereby, repealed. * * * ”
We are not here concerned with the operation or validity of the quoted statute as applied to persons residing in other states who may invoke its authority; nor though we foresee no reason why the judgment to be rendered herein, upon the merits, should not be given full faith and credit in other jurisdictions, are we especially concerned upon that subject. We have the simple duty to perform of considering the statute in question, and, assuming the allegations of the petition to be true, of determining whether they disclose the cause of action which the statute prescribes, and hence whether, if sustained by proof, they would entitle plaintiff to the judgment prayed for. Those allegations are, in substance, as follows:
[2] That plaintiff resides in this state and within the jurisdiction of the trial court; that he married Martha Laurents, in this state, in February, 1908, and with her established a matrimonial domicile in the parish in which he still lives, and has continued to live since his marriage; that he and his wife sep-' arated in January, 1911, and since then have continuously lived separate and apart; that in May, 1914, William Laurents, a brother of his wife, brought suit in the district court for her interdiction, and in May, 1914, was appointed her curator; that he thereafter died, and in June, 1917, upon the recommendation of a family meeting the court appointed Luc Le Doux, a brother-in-law of the interdict, her curator, in place of her deceased brother, and that Le Doux qualified, by taking the oath and giving bond as required by law, and is now the curator of said interdict. The prayer of the petition is that she be cited, through her curator, and, after due proceedings, that there be judgment of divorce, etc.
The contention of defendant’s counsel, “that the law necessarily implies a voluntary living separate and apart,” and does not contemplate, as within its terms or intendment, a case where such living was brought about by “misfortune or other agencies beyond the control of both parties,” and hence that where, as here, it is alleged that the husband and wife have lived separate and apart for seven years or more, the greater portion whereof consisted of a period during which she was interdicted, the petition discloses no right or cause of action under the statute invoked.
As it appears to us, however, the assumption that “the law necessarily implies a voluntary living separate and apart” has no *151 legal foundation, and is inadmissible under the rules governing the construction of laws which our lawmakers have established and which are in consonance with those that are universally recognized. Thus our Civil Code declares that:
“Art. 13. When a law is clear and free from all ambiguity the letter of it is not to be disregarded, under the pretext of pursuing its spirit.”
“Art. 17. Laws in pari materia, or upon the same subject-matter, must be construed with a reference to each other; what is clear in one statute may he called in aid to explain what is doubtful in another.
“Art. 18. The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.” _
_ “Art. 20. The distinction of laws into odious laws and laws entitled to favor, with a view of narrowing or extending their construction, cannot be made by those whose duty it is to interpret them.”
The statute here in question applies in terms to “married persons” (thereby including all married persons and making no distinction between the sick and the well, the competent and the incompetent, or the faulty and the faultless), and declares that, when such “persons have been living separate and apart for * * * seven years or more, either party * * * may sue, in the courts of the state of his or her residence, provided such residence shall have been continuous for the period of seven years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the spouses, during said period of seven years or more” — making no distinction between those who have lived separate and apart for one reason and those who have so lived for another reason, imposing upon them no obligation to bring suits, but granting to either the right so to do, and to have judgment of absolute divorce if, for any reason, they have lived separate and apart, continuously, during seven years or more, and the plaintiff in the suit has been living, during that period, continuously within the state where the suit is brought. The language used being “clear and free from all ambiguity,” and its meaning, as written, being neither dubious nor absurd, there is no excuse and still less necessity for attributing to it an implied meaning at variance with that which is thus expressed, since to do so would be, in effect, to attempt an amendment making the statute read, “when married persons have been, voluntarily, living separate and apart,” etc., although, as written, it reads, "when married persons have been living separate and apart,” etc., and according to our best judgment means, and was intended to mean, living separate and apart, whether voluntarily or involuntarily, and whether so on the part of both, or voluntarily as to either and involuntarily as to the other.
We are referred by defendant’s counsel to the cases of Pile v. Pile, 94 Ky. 308, 22 S. W. 215, and Andrews v. Andrews, 120 Ky. 718, 87 S. W. 1080, 90 S. W. 581, as holding that a statute granting an action for divorce to married persons who have been “living apart * * * for five consecutive years, next before application,” is inapplicable where the separate living has been involuntary by reason of the insanity of the defendant; and referring (without suggestion) to the “note” on pages 1035, 1036, 49 L. R. A. (N. S.), we find the cases of Newsome v. Newsome, 95 Ky. 833, 25 S. W. 878, Irwin v. Irwin, 105 Ky. 632, 49 S. W. 432, Lacey v. Lacey, 95 Ky. 110, 23 S. W. 673, and Boreing v. Boreing, 114 Ky. 522, 71 S. W. 431, are there cited as holding that, under the Kentucky statute, it is immaterial, for the purposes of the divorce, whether the separation was attributable to the fault of the one spouse or the other. So that, according to the different decisions thus mentioned, if we *153 understand them, the husband who, by his ill treatment compels his wife, capable of discharging all her marital duties, and willing to do so, to live apart from him, may obtain a divorce from her, because of her so living, but the husband whose wife, notwithstanding the kindest of treatment by him, is incapable of living with him, by reason of her own infirmities, can never obtain a divorce, but must wait until released by death. In other words, the husband, in the one case, obtains his release by taking advantage of his own wrong, and in the other is denied relief from the same condition, though guilty of no wrong.
In Cooke v. Cooke, 164 N. C. 272, 80 S. E. 178, 49 L. R. A. (N. S.) 1034 (to which the “note” above referred to, is appended), it appeared that the husband brought suit for divorce a vinculo, upon the ground that he and his wife had been living separate and apart for 10 years, pending which suit the wife sued, in another county, for separation from bed and board, where, the husband having pleaded and then answered, there was judgment in favor of the wife, which was affirmed on appeal; that the husband then took a nonsuit on his original demand, and brought another action for final divorce, as against which a plea of res judicata was filed, and sustained by the trial court, whereupon he appealed and presented to the Supreme Court the case here cited, in which he relied upon a statute (of North Carolina, where the litigation occurred) that declares that “if there shall have been a separation of husband and wife, and they shall have lived separate and apart for ten successive years, and the plaintiff in the suit for divorce shall have resided in this state for that period, and no children be born of the marriage and living,” those facts shall constitute sufficient ground for divorce. After answering the contention that the time covered by the decree of separation from bed and board should not be counted as part of the period of separation required for the divorce, and that the husband, having abandoned the wife, should not be allowed to take advantage of a condition brought about by his own misconduct, by saying that the law contained no exceptions on those accounts, but conferred the right to an absolute divorce upon proof of the existence of certain specific facts or conditions, the opinion of the court (leading to the reversal of the judgment appealed from) continues as follows, .to wit:
“The public policy which finds expression in this statute rests on the assumption that it is not well for persons in these circumstances to be absolutely deprived of all right to marry again; and where it has been sufficiently demonstrated by ten years separation that a reconciliation will not occur, and there are no living children to be affected, the lawmakers have deemed it expedient and right to establish this as a cause for absolute divorce. They have not seen fit to make any exception in favor of the injured party, nor to exclude the time covered by decree.for a limited divorce; and, this being true, we must administer the law as we find it and if it proves to be unwise in policy or undesirable in results it must be changed by the legislative department, which is given full and exclusive cognizance of the subject.”
[3] The reason for bolding that the statute here in question was intended as an expression of the public policy of the state, to the effect that there shall be no wives without husbands or husbands without wives, is even stronger than that which appeared in the case above cited, since in that case the conclusion of the court was based upon but one statute, whereas,' in Louisiana, the same policy was in effect announced in a statute enacted 18 years before the act of 1916 became a law. We refer to Act No. 25 of 1898, which gives to the spouse obtaining a judgment of separation from bed and board one year within which to sue for a final divorce, upon the basis of such judgment, and then declares that “the married person against whom the judgment of separation from bed *155 and board shall have been rendered may, at the expiration of two years, * * * apply to and obtain from tbe court that rendered the judgment of separation from bed and board a judgment of final divorce”; the clear purpose being to give to the party judicially declared to be at fault in the matter of the separation the right to demand and obtain a final divorce, in the event of the failure of the innocent party to make such demand within the delay allowed, and the underlying reason, as we interpret the law, being that the General Assembly deemed it unwise to impose continuous celibacy upon either party to a marriage, for any offense against the marriage relation. In the first case to arise under the statute thus referred to, ,one of the contentions was that the plaintiff, against whom the judgment of separation from bed and board had been rendered on the ground of abandonment, should not be allowed a divorce if it could be shown that, during the period following the first judgment, he had been guilty of some other violation of the marital obligations; but the contention was answered by this court as follows:
“This view of the matter ignores the fact that the law gives the right of action which the plaintiff is here asserting to those against whom judgments of separation from bod and board have been rendered because they have violated their marriage contracts, and imposes no other conditions with respect to its enforcement than that such judgments shall have been rendered, that two years shall have elapsed since they became final, and that no reconciliations shall have been effected. * * * In this particular instance judgment of separation from bed and board was rendered against the plaintiff on the ground of abandonment, and if, since the rendition thereof, he had done nothing worse than continue the abandonment, he would not, according to the argument presented, be entitled to the divorce, * * * because he would thereby have been guilty of a continued violation of the marriage contract. If, however, he had adopted the only alternative — i. e., that of returning to his wife — it is quite evident that 'he would not be entitled to the divorce, from which it would appear, as the conclusion to which the argument * * * leads, that, as to plaintiff and others similarly situated, the áct of 189S is a dead letter. Such a conclusion being inadmissible, we must fall back upon the rule that where there is no ambiguity the language of a law must be given its ordinary meaning,” etc. Raymond v. Carrano, 112 La. 871, 36 South. 788.
The case of Hurry v. Hurry, 141 La. 954, 76 South. 160, was brought up on appeal from a judgment sustaining an exception of no cause of action; ' the ground relied on being that, though the parties had been living separate and apart for seven years or more, seven years had not elapsed since the promulgation of the statute. It was held that the statute reads, “That when married persons have been living separate and apart for seven years or more,” etc., and that it is not within the province of the courts to interpret it as reading shall have lived separate and apart after the promulgation of the statute, and that ruling was affirmed in Hava v. Chavigny, 143 La. 365, 78 South. 594 (where it was held that in order to disclose a cause of action, under the act of 1916, it is necessary to allege only those facts and conditions required by that statute), and again affirmed in Hurry v. Hurry, 144 La. 877, 81 South. 378 (before the court on its merits), where it was further held that the objections that the act was unconstitutional were not well founded.
In Lepenser v. Griffin, 83 South. 839,[1] this day decided, it is held that a petition • discloses a cause of action for divorce (under the act of 1916) and a case for constructive service on the absent defendant (under that act and under Act No. 296 of 1910), which alleges that plaintiff was married in another state, left her husband 12 years ago, because of his ill treatment of her, and came to Louisiana, where she has since continuously resided, separate and apart from him; that she has not heard from, or of, him for more *157 than 7 years; and that her last information was contained in a telegram from a priest, in a distant city, saying that her husband was dying. As may be seen, the ease presents several questions which it would he necessary to decide, if we should hold that the word “voluntary” is to be read into the act of 1916, so as to make it read, “When married persons have voluntarily lived separate,” etc., to wit: Whether plaintiff’s leaving her husband was a voluntary leaving, in view of the ill treatment by which it was induced; whether the separation was involuntary, as to the husband, though his wife acted under the compulsion of his ill treatment; whether, under the statute, in which the word “voluntary” is not used, it is necessary that the separation should have begun and should have continued voluntarily, as to both parties, or, if not, as to which of them; and whether the divorce should be ■granted to the party who voluntarily abandons the other, or to the abandoned one, who is thus compelled to live separate and apart. As we see the matter, the General Assembly has unmistakably declared the public policy of the state to be that it is better, in the interest of society and good morals, that married persons, who, for whatever reason there may be, no longer live together, or are likely to do so, should be released from the bonds that were intended to keep them together, and should be allowed to establish other and perhaps happier marital relations. And in reaching that conclusion we conform to the fundamental rule that, in the interpretation of statutes, their purpose should be considered.
It is said that the defendant herein is alleged to have been interdicted after the separation, and to have been insane during the latter and greater part of the 7-year period required by the act of 1916, and that the act is inapplicable to the facts so alleged, since defendant cannot be held responsible whilst insane, which is another way of saying that the living separate and apart contemplated by the act must be voluntary, and, as the logical conclusion from the argument, voluntary as to both parties. But, as we have shown that the statute does not require that the living separate and apart shall be voluntary, or that any reason shall be assigned therefor, the argument falls with the foundation, the fact that one of the parties is insane has no bearing in the matter, and the public policy, which regards it as prejudicial to the interests of society and of the parties themselves that married persons who live separate and apart should be held in their bonds and denied the right to. choose other mates, includes and applies to such cases with the same certainty and for the same reason, as to cases where both parties are sane and their living apart is of their own rational choice; for the power of the General Assembly to prescribe the conditions upon which the marriage relation shall be established by the citizens of the state, and the causes for which it may be disestablished, extends to the sane and insane alike, and, as the statute here in question purports to provide a measure of relief for “married persons,” which is, in terms, made available to “either party,” without exception of any kind, the courts have no more authority to make an exception, and hold that the relief is not intended for married persons, one of whom is sane and the other insane, than to apply such ruling to a case in. which one is a citizen of the state seeking the divorce, and the other a foreigner, or a person who has disappeared for no known reason, and whose whereabouts and mental condition are unknown.
Oounsel for plaintiff quotes from a well-known authority the following, as pertinent to that view:
“Divorce being a civil proceeding, and it being established practice in the civil department *159 of our law to maintain suits against insane parties, the same as against sane ones, there can be no just ground for excepting divorce causes. Both in reason and in authority insanity may excuse an act otherwise unlawful; but, where it does not, it is no defense against the injured person’s claim for redress.”
“To deny the law’s justice to the sane one, because of the other’s insanity, would be to •cast in part on the former the burden which ■God has laid wholly on the latter. Divorce, where there is cause for it, is the plaintiff’s right. If the defendant were sane, he could not prevent it; he has no election. Therefore it is not otherwise when he is insane.”
Bishop on Mar., Div. & Sep. vol. 2, § 518.
The defendant in this case is placed, by the act of 1916, at no greater disadvantage than if (as appeared in the case of Maynard v. Hill, supra) she were divorced by legislative act, for no assigned cause, without notice, actual or constructive, and without its being, made to appear whether she was sane or insane, or than any defendant whose whereabouts are alleged, in a suit of this hind, to be unknown. On the other hand, the situation might have been reversed, and it might have been defendant’s curator, who, upon the recommendation of a family meeting, approved by the court, had brought the suit, alleging that her interests required that she obtain a decree of divorce; and, as we can conceive of circumstances under which such allegations might be well founded, we know •of no authority in the courts to deny, in such case, the relief that would be granted to one sane person demanding it as against another sane person.
It is true that some of the courts in this country have declined to entertain such suits holding that the right to bring them is strictly personal, and cannot be exercised by •one acting in a representative capacity; and it is also true that many of the American courts decline to entertain suits against insane persons, based upon postnuptial insanity, unless that cause of action is specifically prescribed by statute, and that such statutes are infrequent and are usually strictly construed. Mohler v. Shank, 93 Iowa, 273, 61 N. W. 981, 34 L. R. A. 161, and note, 57 Am. St. Rep. 274.
According to the English rule, however (as stated in the above-cited “note”):
“Proceedings for divorce are civil, and though no provision for * * * lunatics is contained in the statute, recourse must be had in such case to the ordinary forms of civil courts where lunatics are litigants. * * There is no difference between cases of lunatic petitioners and lunatic respondents in actions for divorce, on the question of the right to prosecute or defend by committee. * * * And the argument that the right to sue for divorce is personal, and cannot be exercised by any one but the person wronged, is equally applicable to suits for judicial separation, which it is conceded may be maintained on behalf of lunatics. * * * And the insanity of a husband or wife is not a bar to a suit by the committee of one of thorn who is a lunatic for the. dissolution of the marriage. Baker v. Baker, L. R. 5 Prob. Div. 142, 49 L. J. Prob. (N. S.) 49, 42 L. T. N. S. 332, 28 Week. Rep. 630, affirmed in L. R. 6 Prob. Div. 12, 49 L. J. Prob. (N. S.) 83.”
See, also, note to Kimball v. Kimball, 82 Am. Dec. 194, citing certain American decisions to the above effect.
Insanity is made a ground for divorce by special statutes in Arkansas, Washington, and Kentucky, and perhaps in a few other states; but we are referred to no case in which the facts and law are exactly the same as here disclosed.
Considering that the judgment heretofore rendered is well founded and should be reinstated and made final,
It is so ordered.
O’NIELL, J., dissents.

 Post, p. 584.