PROVOSTY, J.
[1] This is a suit for divorce, predicated on Act No. 269, p. 557, of 1916, § 1, reading:
“That when married persons have been living separate and apart for a period of seven years or more, either party to the marriage contract may sue, in the courts of the state of his or her residence, provided such residence shall have been continuous for the period of seven years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the spouses, during said period of seven years or more.”
One defense is that the plaintiff wife cannot avail herself of this law because the sep *743 aration is wholly attributable to her, she hav-' ing refused to live with defendant, although he was anxious that she should do so.
This defense is without merit. Said statute does not require that the plaintiff spouse should be without fault. Hava v. Chavigny, 143 La. 365, 78 South. 594; Hurry v. Hurry, 144 La. 877, 81 South. 378.
[2] The parties separated in January, 1911, by the wife leaving the matrimonial domicile, with all her belongings, and going to live with her mother. She says she did so because of unfaithfulness on the part of her husband, Which she could no longer endure. In June, 1911, she returned to the matrimonial domicile, after- a full and complete reconciliation and resumption of marital relations, according to the husband. Not so, according to the wife; but only to live separately in the same house, and because of promises made by him which he did not keep, one of which was to make her a donation of the home. One witness says that this patching up of the situation was just after defendant had made his first communion. After three months she again removed to the house of her mother with her lares and pen-ates. He does not on the witness stand deny the very grave accusation thus brought against him. Shortly after this second abandonment she brought suit for a divorce, but soon voluntarily discontinued it, for the sake, she says, of the children and the appearances. They were living in the town of Marksville, where the wife’s parents lived, and where she was born and had lived up to the time of her marriage. She was 44 years old, and he 49. They had been married 21 years, and had four children, one of whom, the eldest, a daughter, was married, and the next in age was in his nineteenth year. Fourteen years of this married life they had spent in Bayou Rouge Prairie, where the husband owned a farm, on which he had been born and had lived up to the time of his marriage. In 1993, 8 years before the separation, the wife had persuaded him to remove to Marksville. There for 2 years his occupation was that of drayman. Then he opened a grocery store. This business was not successful. The creditors of it “sold him out.” 1-Ie then, in October, 1911, sold his home, and, in November, 1911, went back to Bayou Rouge Prairie/some 25 miles from Marksville. His wife, he says, refused to follow him there; and this she does not contradict. Thereafter she lived in Marks-ville except for a few months, when she lived in Eunice and he in Bayou Rouge Prairie. She denies that in the 8 subsequent years, until the filing of the present suit, she met him more than once, which was when the next to the youngest child died, and he came to the funeral. Another time, when she was supposed to be dying, her daughter sent for him, and he came. He claims that he saw her on two other occasions, and that on one of them he was at her house one entire day, and spent the night with her maritally, and that this was in 1914. She denies positively that these visits took place. She is corroborated by her eldest son, who lived with her and supported her; also by the youngest child, who was 4 years 'old at the time of the separation in 1911, and,slept in the same bed with her. The neighbors, living across the street, and a few doors off, never saw him. One neighbor who passed eight times each day regularly by the house where the wife lived never saw him. Other witnesses who would more than likely have seen him if he had come, and at any rate would have heard of it, never saw him, nor heard of his having come. All knew of the two visits; that for the funeral of the child, and that when the wife was supposed to be dying. Against all this, he has but his own testimony, and three letters of hers which he produces, of dates September 4, 1913, August 13, 1913, and May 24, 1914. *745 These letters contain many affectionate expressions, such as a loving wife might use in writing to her husband.
She begins her letter of May 24, 1914:
“What in the world' is the matter with you; after coming to see us and ask me to make friends again, you left me and never write a word since, nor send me the money you promised to send.”
In this letter she complains bitterly of the conduct of her eldest son, who she says is drinking hard and no longer supporting her. She speaks of going to Texas to live, and says:
“If you have to come to give my home, come at once, for I will have to leave soon if you do not come. * * * Now is the time for you to come, if you are to come at all.”
In this letter she urges him to sell his crop, chickens, work animals, etc., at Bayou Rouge Prairie and come; she asks and begs him to send her money, and dwells upon the needs of the youngest child, who, it seems, was sickly — an invalid, more or less, all the time.
In her testimony she says that the reason of her making these letters so affectionate was to secure a home for herself and child, especially for the sake of the child, as they were in want and trouble all the time, dependent upon the dissipated son, who was cruel to the sickly child.
He testifies that he was willing and anxious all the time that she should come and live with him on the farm, but that she was unwilling to leave Marksville. He says that they exchanged more than 100 letters, and that he destroyed all those he received from her, except the 3 offered in evidence. She denies having written any letters but the 3.
Defendant fixes the date when, as he says, he spent the night with plaintiff, as between the 15th and the 20th of May, 1914, and in corroboration of this his counsel refers to passages in the letter of May 24, 1914. The expressions in question are quoted in the brief as follows:
“What in the world is the matter with'you. After coming to see us and ask to make friends again, you left and never wrote a word since. If you would only know how Jules is mean for-me, he never spoke a word to me since you were here * * * he has not eaten a mouthful here since you were here with us * * * he [Merlin] has been sick since you were here. He speaks about you all the time since he saw you. * * * Xou looked bad when you came you looked thin.”
But, if defendant had spent a day and night with plaintiff five or nine days before the writing of this letter, she would not have had to write him a long letter about the conduct of the eldest son, about her intention to go to Texas, about his having asked her to make friends, about the eldest son being angry with her because she had been unwilling to keep for one whole month two certain lady cousins who had come on a visit, about her being afraid sometimes that this eldest son would kill the child, and about all the troubles that she had had.
This all-day visit when no one saw him, and this one night in eight years, are too improbable to be believed, especially in view of the positive testimony of the youngest child and of the eldest son, both of whom, it seems to us, would inevitably have known of their father’s spending one entire day and night with their mother. In fact, after the three years’ separation, the probability is that this visit would have furnished fine material for several days’ gossip in the town.
We do not doubt at all that, in saying that the affeetionateness of her said letters was due entirely to her anxiety to win a home and support for herself and child, the plaintiff is speaking from her present impressions, and not according to the feeling which in truth dictated the affectionate expressiops in the letters; but the case is none the less made out by her that for more than seven *747 years she and defendant had been living separate and apart, and this entitles her to judgment.
The judgment' appealed from, which rejected plaintiff’s demand, is set aside, and it is now ordered, adjudged, and decreed that the marriage between the plaintiff and the defendant be dissolved, and that defendant pay the costs of this suit.