Statement of the Case.
MONROE, C. J.
Plaintiff sues for a divorce, alleging that she was married in Memphis, Tenn., in November, 1905; that she there resided, with her husband, for two weeks, when she was compelled to leave him by reason of his misconduct; that they became reconciled in July, 1906, and lived together for a month in Chicago, when his cruel treatment caused her to leave him permanently, and that she then came to New Orleans, where she has resided for the past 12 years; that in March, 1907, she received a telegram from a priest in Denver, Colo., saying that her husband was dying; and that she has not since heard of or from him. She caused a curator ad hoc to be appointed for the purposes of this suit, and he pleaded to the jurisdiction of the court ratione personas et materise, and, in the alternative, alleged that the statutes upon .which plaintiff relies contravene the state and federal Constitutions. The plea to the jurisdiction was sustained, and plaintiff has appealed.
Opinion.
The following propositions, stated in substance, are relied on as sustaining the judgment appealed from, to wit:
[1] (1) The .wife has no other domicile than that of the husband, and must follow and, live with him wheresoever he may choose to reside. (2) Divorce is a personal action, and an absentee defendant cannot be brought before a-court of this state save by domiciliary or personal service of process. (3) The courts of Louisiana will not entertain a suit for divorce for a cause originating elsewhere and prior to the acquisition by the parties, or by the plaintiff, of a residence in this state, save in a case where, the marriage having taken place here and the spouses having removed to a foreign country, the wife, returning here, complains of treatment by her husband, while they were abroad, which, under our law, would entitle her to a separation from bed and board. (4) The courts of Louisiana have no jurisdiction to *587 dissolve a marriage contract made in another state, .where the husband continues to reside, for a cause originating there. And the following provisions of the law of Louisiana and adjudged cases, constituting in part, the jurisprudence of this court, are cited in support of those propositions: Civil Code, 39, 120, 142; Chretien v. Husband, 5 Mart. (N. S.) 60; Dugat v. Markham, 2 La. 35; Succession of Robert, 2 Rob. 427; Neal v. Husband, 1 La. Ann. 315; Muller v. Holton, 13 La. Ann. 1, 71 Am. Dec. 504; Sanderson v. Ralston, 20 La. Ann. 312; Blake v. Nelson, 29 La. Ann. 253; Gahn v. Darby, 36 La. Ann. 70; Champon v. Champon, 40 La. Ann. 28, 3 South. 397; Larquie v. Wife, 40 La. Ann. 457, 4 South. 355; Heath v. Heath, 42 La. Ann. 437, 7 South. 540; Glaude v. Peat, 43 La. Ann. 163, 8 South. 884; McLean v. Janin, 45 La. Ann. 665, 12 South. 747; Nicholas v. Maddox, 52 La. Ann. 1493, 27 South. 966; Birmingham v. O’Neil, 116 La. 1085, 41 South. 323; Van Horn v. Arantes, 116 La. 133, 40 South. 592. The cases of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, Bell v. Bell, 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804, and Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, are cited in additional support of propositions 2 and 4. Article 39 of the Civil Code is found under the title “Of Domicile,” and declares that “a married woman has no other domicile than that of her husband”; that the domicile of an unemancipated minor is that of his father, mother, or tutor; that the domicile of an interdict of full age is that of his curator.
Article 120 is found under the subtitle “Of the Respective Rights and Duties of Married Persons,” and reads:
“The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition.”
Article 142 declares, in substance, that whenever a marriage shall have been contracted' in this state, and the husband thereafter removes, with his wife, to a foreign country and there behaves towards her in such a manner as would entitle her, under óur law, to a separation from bed and board, it shall be lawful for her, upon returning here, to bring suit for such separation; that the court shall appoint an attorney to represent the absent defendant; and that the judgment to be rendered shall have the same force and effect as though the parties had never left the state.
It will thus be seen that the same article which requires the wife to live with and follow her husband also requires the husband “to receive her and to furnish her with whatever is required for the convenience of life,” etc.
The preceding article (119) declares that “The husband and wife owe to each other mutually fidelity,’ support and assistance;” and article 143 declares that “separation, grounded on abandonment by. one of the married persons can be admitted only in the case when he or she has withdrawn himself or herself from the common dwelling without a lawful cause, and has constantly refused to return to live with the other, and when such refusal is made to appear in the manner hereafter directed” (i.‘ e., by reiterated summonses and judgments ordering such returns).
It is plain, therefore, that our law has always recognized the right of the wife to establish a separate domicile either when, the husband refuses to receive and provide for her at the domicile selected by him or when, though he select such a domicile, he gives her lawful cause for refusing to abide therein; and so it has been held by this court.
In Smith v. Smith, 43 La. Ann. 1140, 10 South. 248 (a case not cited by the learned *589 curator), it appeared that Alexander Smith, then a resident of Louisiana, was married to his first wife in Maine, where she resided, but that they came at once to New Orleans, established a matrimonial domicile in this city, and lived here for 11 years, during which time several children were born to them; that the wife then discovered that the husband was unfaithful, and returned to her home in Maine, where she sued for and obtained a judgment of divorce by service of process in New Orleans, the husband making no appearance in the case and thereafter contracting a second marriage; and that after the death of Smith the litigation before the court was brought about by reason of a claim asserted by the first wife as guardian of her children, predicated upon the alleged invalidity of the divorce which she had obtained, and the consequent invalidity of her husband’s second marriage. In disposing of those issues this court said (43 La. Ann. 1146, 10 South. 249):
“The validity of the Maine divorce depends upon the question of fact, whether or not the libelant, Mrs. E. P. Smith, had at the commencement of the proceedings acquired a bona fide residence or domicile in Maine. Although the law fixes the domicile of the wife as being that of her husband, universal jurisprudence recognizes an exception to the rule in the case where the husband’s conduct has been such as to furnish lawful ground for a divorce, which justifies her in leaving Mm, and therefore necessarily authorizes her to live elsewhere and to acquire a separate domicile. Cheever v. Wilson, 9 Wall. (U. S.) 108 (19 L. Ed. 604); Barber v. Barber, 21 How. (U. S.) 582 (16 L. Ed. 226); 2 Bishop, Mar. & Div. 475; Schouler, Hus. & Wife, § 574; 5 A. & E. Enc. of Law, p. 756.
“Where such a separate domicile, based on lawful cause, is bona fide established by the wife, her marriage status becomes subject to the jurisdiction of the courts of that domicile. Says Mr. Cooley:
“ ‘We conceive the true rule to be that the actual bona fide residence of either husband or wife within a state will give that state authority to determine the status of such party, and to pass upon questions affecting his or her continuance in the marriage relation, irrespective of the locality of any alleged offense; and that any such court in that state as the Legislature may have authorized to take cognizance of the subject may lawfully pass upon such questions and annul the marriage. * * * ’ Cooley, Const. Lim. (4th Ed.) p. 502. See, also, authorities above cited and Pennoyer v. Neff, 94 [should be 95] U. S. 725, 24 L. Ed. 565.”
It is true that there was a statute of Maine to the same effect as article 142 of our Civil Code, but, according to the. ruling of the court and to the “universal jurisprudence” to which the opinion refers, the authority of the state of Maine to enact and authorize the enforcement of that statute was based upon the jurisdiction which every sovereign state possesses to determine the status of those who are bona fide residents of its territory; and the statute would have been equally competent if it had applied to any married person so residing, whether the marriage had been contracted in Maine or elsewhere. In Butler v. Washington, 45 La. Ann. 279, 12 South. 356, 19 L. R. A. 814 (not cited by defendant), it appeared that the litigants had been married and had established a matrimonial domicile in the parish of Avoyelles; that the wife had there obtained a judgment of separation from bed and board upon personal citation of defendant, and in the course of time brought suit for divorce, alleging that he was absent from the state, and praying that a curator ad hoc be appointed to represent him, which was done, and judgment rendered as prayed for; and it further appears that the suit before the court was brought by the husband to annul that judgment, “as having been rendered in a suit in which he had not been cited personally”; it being alleged “that substituted service on a curator ad hoc was unavailing to bring him into court.” In affirming the judgment rejecting plaintiff’s demand, this court said (45 La. Ann. 285, 12 South. 359, 19 L. R. A. 814):
*591 “In such instances the question of status occupies the same relation to the parties litigant as a property right would have in others, and jurisdiction vested in a court to decide it attracts to it jurisdiction over the parties interested, and jurisdiction thus acquired renders effective substituted service on an absentee. Such a suit, affecting as it does ‘the personal status’ of the parties, is stated to be an exception to the general rule that is announced in Pennoyer v. Neff; for the court was careful to safeguard its views with this statement, viz.:
“ ‘To prevent any misapprehension of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything that we have said, that a state may not authorize proceedings to determine the status of one of its citizens towards a nonresident which would be binding within the state, though made without service of process or personal notice to the nonresident. The jurisdiction which every state possesses to determine the civil status and capacities of its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on with its authority. The state, for example, has the absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the state, a dissolution may be granted, may have removed to a state where no dissolution is permitted. The complaining party would therefore fail if a divorce were sought in the state of the defendant, and if application could not be made to the tribunals of the complainant’s domicile in such case, and proceedings be there instituted without personal service or process, or personal notice to the offending party, the injured citizens would be without redress.’ ”
In Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. p. 654, the question presented for consideration was the validity of a legislative divorce obtained by a resident husband against a nonresident wife without notice to her and the court reviews the law and jurisprudence pertaining thereto at coni siderable length, and shows that the states of this Union have always possessed and exercised, by legislative enactments or through courts authorized to that effect, as they have thought proper, the power to determine the marital status of those residing within their limits, notwithstanding the absence of the other and nonresident parties to such relations, and that such action does not impair the obligations of contracts, within the meaning of the Constitution of the United States. In Bell v. Bell, 181 U. S. 175, 21 Sup. Ct. 551, 45 L. Ed. 804 (cited on behalf of defendant), the wife sued for divorce in New York, and the husband pleaded a decree of divorce that he had obtained in Pennsylvania on substituted service; but it was held that he had not acquired a bona fide residence in Pennsylvania, and that the wife, having been a resident of New York and having made no appearance in the suit, the decree' so pleaded was entitled to no faith or credit in New York or elsewhere. “No valid divorce from the bonds of matrimony,” said the court, “can be decreed on constructive service by the courts of the state in which neither party is domiciled.” In Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1 (cited by defendant), it was held that a judgment of divorce obtained by a husband in Connecticut, where he was domiciled, against a wife legally domiciled in New York (who was constructively served, but did not appear), though good in Connecticut, was not enforceable in other states under, the “full faith and credit” clause of the federal Constitution.
[2, 3] We think, then, that it may safely be said that, whilst there is some difference of opinion among the courts as to the precise conditions under which a judgment of divorce, valid where rendered, should be accorded full faith and credit in other jurisdictions, the authorities are agreed that each state may determine, according to its own Constitution and statutes, the marital status of any one residing within its territory. The learned curator ad hoe, representing the defendant herein, places his main reliance upon the Louisiana law and juris *593 prudence cited by him, all of which antedates the statutes upon which plaintiff relies; and, if it be true that prior to the enactment of those statutes questions such as are here presented were determinable according to the state law, it must also be true that they are still determinable by that law, which, however, quoad the questions at issue, is now embodied in the statutes relied on by plaintiff, as the latest expressions of the legislative will, repealing all antecedent legislation in conflict with their provisions.
Those statutes are Act 296 of 1910, which reads:
“Section 1. * * * That in any action for separation from bed and board or divorce, where the defendant is absent from the state, or in case of reconvention, when the plaintiff is absent from the state; and, in actions for divorce based on a judgment of separation from bed and board, when the adverse party is absent from the state, the court having jurisdiction over the cause shall, upon application of any party in interest, appoint a curator ad hoc to represent such absent party, and all proceedings shall be had contradictorily with said curator ad hoc, and any judgment or divorce may be rendered .against same curator ad hoc as might be rendered against his principal as if he were present in person in open, court.
“Sec. 2. * * * That all laws or parts of laws in conflict herewith be and the same are hereby repealed.”
And Act 269 of 1916, which is entitled and reads as follows:,
“An act to allow a divorce to married per-, sons who may have been living separate and apart for a period of seven years or more.
“Section 1. Be it enacted * * * that, when married persons have been living separate and apart for a period of seven years or more, either party to the marriage contract may sue, in the courts of the state of his or her residence, provided such residence shall have been continuous for the period of seven years, for an absolute divorce, which shall be granted on proof of the continuous living separate and apart of the. spouses during said period of seven years or more.
“See. 2. * * * That all laws, or parts of laws, contrary to, inconsistent with or in conflict with, this law be, and the same are hereby repealed.
“Sec. 3. * * * That this law take effect according to law.”
The act of 1910, thus quoted, has been recognized as of authority in Wheeler v. Britton, 134 La. 63, 63 South. 624, and Stevens v. Allen, 139 La. 658, 71 South. 936, L. R. A. 1916E, 1115. The act of 1916 has been so recognized in Hurry v. Hurry, 141 La. 954, 76 South. 160, in which case it was said:
“Act 269' of 1916, p. 557, adds a fifth ground for divorce, namely, when married persons have been living separate and apart for a period of seven years or more. * * * The language of the act is clear and free from ambiguity. It says: ‘That, when married persons have been living separate and apart for a period of seven years or more,’ etc. This language can convey but one meaning to the mind. If, as contended for by defendant, the Legislature meant to say that the period of seven years or more referred to in the act was to be after the passage and promulgation of the act, the language would have been different. The court cannot add the words ‘after the promulgation of this act.’ ”
That ruling has been affirmed in Hava v. Chavigny, 143 La. 365, 78 South. 594, in which case it was held that the act in question does not contravene article 166 of the state Constitution, declaring that—
“No ex post facto law, or any law impairing the obligations of contracts, shall be passed, or vested rights be divested,” etc.
And again affirmed in Hurry v. Hurry, 144 La. 877, 81 South. 378 (previously before the court upon an appeal from a judgment sustaining an exception of no cause of action and again brought up by appeal from a judgment on the merits), in which it was additionally held that the act does not contravene the “due process of law” provisions of the state or federal Constitutions.
In the opinion of the Supreme Court of the United States in the case of Haddock v. Haddock, 201 U. S. 566, 567, 569, 26 Sup. Ct. 526, 527, 50 L. Ed. 868, 869, 5 Ann. Cas. 1, certain propositions are stated as “irrevoca- *595 Wy concluded by previous decisions,” and among them the following (stating them in substance) to wit:
“Second.” That where a personal judgment is rendered “against a nonresident merely upon constructive service, and therefore without acr quiring jurisdiction over the person of the defendant,” it “may not be enforced in another state in virtue of the full faith and credit clause” of the Constitution. “Indeed,” reads the opinion, “a personal judgment so rendered is, by operation of the due process clause of the Fourteenth Amendment, void as against the nonresident even in the state where rendered. * * *
“Third. The principles, however, stated in the previous proposition are controlling only as to judgments in personam and do not relate to proceedings in rem. * * *
“Fourth. The general rule stated in the second proposition is, moreover, limited by the inherent power which all governments must possess over the marriage relation, its formation, and dissolution, as regards their own citizens. Prom this exception it results that where a court of one state, conformably to the laws of such state, or the state, through its legislative department, has acted concerning the dissolution, of the marriage tie as to a citizen of that state, such action is binding in that state as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the state in dealing with its own citizen concerning the marriage relation was repugnant to the due process clause of the Constitution.”
And in the dissenting opinion in the same case (concurred in by four of the members of the court), it is said that there are two propositions which may be admitted, to wit:
“1. That a judgment for damages in an action in personam is valid only when personal service has been made upon the defendant within the jurisdiction of the court rendering the judgment. “ * *
“2. That the courts of one state may not grant a divorce against an absent defendant to any person who has not acquired a bona fi.de domicile in that state. The same rule applies if he has removed thither solely for the purpose of acquiring a domicile and obtaining a divorce for a cause which would have been insufficient in the state from which he removed.”
In Smith v. Smith, supra, it was held that the bona fide residence of the plaintiff confers jurisdiction in a suit affecting his marital status. In Pennoyer v. Neff, supra, the word “citizen” is used at one time and the word “inhabitants” at another. But “citizens,” “residents,” and “inhabitants” are not necessarily convertible terms. In Beebe v. Armstrong, 11 Mart. (O. S.) 442, the trial court assumed that defendant was a citizen of Louisiana because he described himself as “of the parish of Orleans,” and actually resided in this parish. But this court through Martin, J., said:
“This circumstance shows that he is a resident or inhabitant of that parish, and consequently of this state. The conclusion of the court could only be justified on the ground of Citizenship being coextensive with residency or inhabitancy. An alien does not become a citizen of, by a residence within the United States; neither does a citizen of New York acquire the ctiizenship of Louisiana by residence within this state.”
By other authority we find it said:
“While the word ‘citizen’ is capable of more meanings than one, it is not a convertible term with ‘inhabitant’ or ‘resident,’ although it is often used "synonymously with such terms, without any implication of political or civil privileges. It may indicate a permanent resident, or one who remains for a time, or from time to time. The word must always be taken in the sense which best harmonizes with the subject-matter in which it is used.” 11 Cyc. p. 774.
[4] In the statute here in question (Act 269 of 1916) the word “residence” is used as determinative of the right which the statute purports to confer, but as the state of Louisiana is not concerned with, and has no jurisdiction with respect to, the marital relations of citizens of other states or countries who may be merely casual or temporary residents within her borders, it is evident that the word “residence” is to be taken in the sense of such residence de facto et ahimo manendi, •which, by conferring citizenship, vests jurisdiction of that relation; the requirement *597 that a married person who resides here continuously for 12 years, and remains continuously separated from his or her spouse during that period, considered in connection with the right conferred, being, in effect, a declaration that such person is to be regard1 ed, for the purposes of the exercise of that right, not only as a resident, but as a citizen, of this state, with respect to whom, therefore, the state, or the state courts, may determine .whether he or she shall continue in or be released from the marriage relation.
The judgment appealed from is therefore set aside, and the case is remanded to be proceeded with according to law and to the views expressed herein; the costs of the appeal to be borne by the defendant and ap-pellee.
O’NIELL, J., concurs in the decree.