(100 South. 292)

No. 24487.

## LAICHE v. HIS WIFE.

(April 21, 1924. Rehearing Denied by Division B May 14, 1924.)

*(Syllabus by Editorial Staff.)*

**Divorce ⬦62(2) — Court of husband's domicile held to have jurisdiction of suit against wife for separation.**

In view of Civ. Code, arts. 39, 120, a married woman's domicile is that of her husband, and hence civil district court of parish wherein husband was domiciled had jurisdiction of his suit for separation a mensa et thoro, on ground of abandonment, notwithstanding wife remained in parish where matrimonial domicile was first established.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Louis G. Laiche against his wife. From a judgment dismissing his suit, plaintiff appeals. Judgment annulled, and case remanded.

Leo L. Dubourg, of New Orleans, for appellant.

Walter J. Suthon, Jr., of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

O'NIELL, C. J. The plaintiff has appealed from a judgment dismissing his suit on a plea to the jurisdiction of the court. The suit is for a judgment of separation a mensa et thoro, on the ground of abandonment.

The plea to the jurisdiction of the civil district court for the parish of Orleans is based upon defendant's averment that she has retained a separate domicile in the parish of St. James, where the matrimonial domicile was established. In support of the plea she introduced in evidence the testimony of five witnesses, taken under commission, besides her own depositions, to show that she had not abandoned her husband, but that he had abandoned her, and that his conduct had been such as to justify her having a separate domicile.

The parties here were married in 1901 in the parish of St. James, where they lived together until the year 1918. Then, according to the testimony, plaintiff began neglecting and slighting his wife, and was guilty of conduct that might well have justified her leaving him and seeking a divorce. In January 1919 he came to New Orleans and had resided here for a period exceeding a year when he filed this suit. In the meantime, he had written three letters to his wife, which she has filed in evidence in support of her plea to the jurisdiction. In the first letter, which was very brief and to the point, he suggested that, inasmuch as there was no chance for a reconciliation, they should have a divorce. In the second letter, dated the 10th of February, 1920, he declared that he had decided to make his permanent domicile in New Orleans. He gave his street address, and requested his wife to say whether she intended to come and live there. In the third letter, dated the 28th of March, 1920, he repeated what he had said in the second letter, which he complained had been ignored. He said that that was the last time that he would write to ask what her intention was; that, if he did not have an answer within a few days, he would have the court in New Orleans to serve papers upon her, and that then they would see whether she would answer. He said that he was getting damned tired of having other people bossing his personal affairs, and that he was going to show some of them that thenceforth he would be boss. He said that she should report at the domicile "beyond the shadow of a doubt," and that those who had been advising her in the past would not be allowed in his house, for it would be his pleasure to put them out. The letters were not polite, much less inviting. The purpose, manifestly, was not that the

lady should come and live with her husband, but that she should resent the insult, refuse to come, and thus give cause for a suit for a separation, on the ground of abandonment.

Plaintiff's counsel contends—and we agree with him—that the evidence which the defendant has offered of her husband's bad conduct is not pertinent to the question of jurisdiction, however pertinent it might be in defense of this suit on its merits. It is not disputed that plaintiff has established his residence and domicile in New Orleans. It is conceded, or must be conceded, that he is subject to the jurisdiction of the court in which he has brought this suit. And, while the marriage lasts, she is subject to the jurisdiction of the same court. A married woman has no other domicile than that of her husband. Rev. Civ. Code, art. 39. She must go wherever he goes to reside. Rev. Civ. Code, art. 120. The rule, of course, has its limitations, as when a man's misconduct compels or justifies his wife's leaving him and establishing another residence, or when he abandons her. But, when he changes his domicile from one parish to another parish in the state, his new domicile becomes also the domicile of his wife; and, if he sues to compel her to either come and live with him or suffer a judgment of separation to go against her, the jurisdiction in which she must submit the question whether she has good cause for refusing to live with him is at the newly acquired domicile of the husband—which in law is also her domicile.

A case very much like this was that of Gahn v. Darby, 36 La. Ann. 70. The parties were married in Union parish, and retained their matrimonial domicile there five years. Then the husband brought suit there for separation a mensa et thoro, but abandoned the suit. He moved to New Orleans, and brought suit here for a separation on the ground of abandonment. The summonses were served upon the wife, as in this case,

commanding her to come to her husband's domicile. In answer to the suit she pleaded, "in justification of her refusal to follow her husband, that * * * he had been guilty of unpardonable negligence and coolness, and of cruel and outrageous conduct, towards her, to such an extent as to render their living together insupportable," and that, by means of the suit for separation, which he had filed in Union parish, he had publicly defamed her good name and character. Her answer concluded with a reconventional demand for a judgment of separation in her favor. Each party claimed the legal custody of their only child, who was with the mother. The district judge rejected the plaintiff's demand for a judgment of separation, and dismissed the defendant's reconventional demand as in case of nonsuit. Both parties appealed; and this court gave judgment for the plaintiff, saying:

"The wife is bound to live with her husband and to follow him wherever he chooses to reside. C. C. art. 120.

"If therefore, the husband decides to change the matrimonial domicile from one place to another, for reasons of his own, the wife must follow him to his new abode. Her refusal, without lawful cause, will be construed as an abandonment within the meaning of the law, and will justify his demand for a judgment ordering her to comply with his request."

It is true, in the case cited, the defendant did not take exception to her being sued at the newly acquired domicile of her husband, instead of being sued at the matrimonial domicile, which she had retained as her domicile. But the process of reasoning, in the decision cited, is a demonstration that it would be begging the question, in a case like this, to let the question of the court's jurisdiction over the defendant wife depend upon whether she was justified in refusing to follow her husband to his new domicile and to make his residence hers. The court said:

"The only defense which could defeat the husband's demand, which is at this stage, for a

judgment sentencing the wife to comply with his request to join him in the matrimonial domicile which he proposed to establish in the city of New Orleans, in lieu of their former domicile in Union parish, must rest on proof on the part of the wife, of a lawful cause for her refusal to further cohabit with her husband. Now, under the pleadings in this case, such a cause was alleged to be formed in the cruel and outrageous conduct of the husband and in the public defamation of his wife by him, through the injurious action for separation which he had filed against her in Union parish and which he is alleged to have abandoned for the reason that he feared to meet her on the proof. * * *

"A careful study of the record has lead us to the conclusion that the defendant has failed to prove a legal justification of her refusal to follow her husband to the new matrimonial domicile.

"In default of such justification she was bound to live with her husband and to follow him wherever he chose to reside and this obligation implied the duty to leave the parish of Union and to join her husband in the city of New Orleans, when he requested her in January, 1883, to come to him at the domicile which he had established in that city. C. C. art. 120; 5 Mart. N. S. 61, Chretien v. Husband; 1 A. 315, Neal v. Husband."

In Chretien v. Her Husband, 5 Mart. (N. S.) 60, cited supra, where the wife sued the husband for separation on the ground of abandonment, the husband answered that he had changed his residence from the house where his wife was to another house in the same parish, and that her complaint that he had abandoned her was not consistent with her obligation to follow him wherever he chose to reside. Mr. Justice Martin, explaining for the court how a man might be guilty of abandoning his wife, said:

"The case of abandonment of which the Code speaks is that where the husband abandons the wife, and wanders about without a fixed domicile. Many circumstances may imperiously require the removal of the family from one part of the state to the other. Of the wants of the family, and the means of supplying them, and the place of its residence, the husband is the best judge; and wherever he chooses to go the wife must certainly follow him. If she remains behind, he, and not she, may complain of abandonment."

The defendant's counsel cites and relies upon the rulings in Smith v. Smith, 43 La. Ann. 1140, 10 South. 248; Stevens v. Allen, 139 La. 658, 71 South. 936, L. R. A. 1916E, 1115; and Succession of Lasseigne, 143 La. 1095, 79 South. 873. It is sufficient to say, without going into an analysis of the cases cited, that the issues in them were so presented that the decisions are not appropriate here. What was said in Smith v. Smith, to the effect that a married woman might acquire a domicile apart from that of her husband, and might thus confer upon the court at her domicile jurisdiction over her marriage status, was mainly, if not entirely obiter dictum. On the facts of the case the decision went the other way. The court said:

"We conceive it to be our duty in such a case to require very full and conclusive proof of the bona fides of the acquired domicile; and the evidence on the point here presented is not entirely satisfactory. We should hesitate, on such proof, to maintain the validity of a divorce so obtained. But we find it unnecessary now to decide this point, and have discussed it so fully mainly to show the exact status of the divorce decree, as one, presenting upon its face no intrinsic nullity, and subject to attack only on proof of extrinsic facts undermining the jurisdiction."

Our conclusion is that the civil district court for the parish of Orleans has jurisdiction of this case. The decisions which we have quoted—and much that we have said—may seem more pertinent to the merits of the case; but that is because the issue tendered by the plea to the jurisdiction belongs to the merits of the case. We do not express an opinion on the question whether the defendant is under obligation to come to New Orleans and live with her husband, or whether her refusing to come and live with him here would be in law an abandonment of the husband by her.

The judgment appealed from is annulled, and it is ordered that this case be remanded to the civil district court for further proceedings consistent with the foregoing opinion.

The defendant is to pay the costs of this appeal; the liability for other costs is to depend upon the final judgment.

Rehearing denied by Division B, composed of DAWKINS, LAND, and LECHE, JJ.