80 So.2d 864 (1955)
227 La. 921
Edgar C. JUNEAU
v.
Mildred Palmisano JUNEAU.
No. 41659.
Supreme Court of Louisiana.
April 25, 1955.
Rehearing Denied May 23, 1955.
*865 Richard Dowling, New Orleans, for appellee and appellant.
MOISE, Justice.
Two appeals are presented for our consideration.
Edgar C. Juneau, plaintiff-husband, appealed suspensively from a judgment dismissing his suit against his wife. Mildred Palmisano Juneau, for separation from bed and board on the ground of abandonment. On the day set for hearing in this Court, he failed to make an appearance or file a brief in support of his appeal. His appeal will, therefore, be dismissed. Chatelain v. Besnard, 219 La. 488, 53 So. 2d 243; Succession of Gumbel, 223 La. 1023, 67 So.2d 578.
The record discloses that plaintiff and defendant separated on December 20, 1952. On January 30, 1953, a previous suit instituted between them was dismissed by consent of the parties on the ground that they had become reconciled. The following day, January 31, 1953, Mrs. Juneau left for Las Vegas, Nevada, where she filed suit for divorce after an alleged six weeks's residence and was granted a divorce by default, on the ground of mental cruelty, on April 9, 1953.
On February 3, 1953, plaintiff-husband filed suit against Mildred Palmisano Juneau in the Civil District Court for the Parish of Orleans, State of Louisiana, for separation from bed and board on the ground of abandonment.
On May 25, 1953, Mildred Palmisano Juneau, the defendant-wife, filed exceptions of ratione materiae and ratione personae and a plea in bar to plaintiff's petition. The plea in bar was predicated on the Nevada decree of divorce obtained on April 9, 1953, and she prayed that the Nevada decree be given full faith and credit under Article IV of the United States Constitution. The trial judge overruled these exceptions and plea, and reserving her rights under the exceptions defendant filed an answer and reconventional demand to plaintiff's petition, in which she denied his allegations, reasserted the Nevada decree of divorce, and prayed for separation from bed and board on the ground of cruel treatment.
The trial court dismissed the entire proceeding, and Mildred Palmisano Janeau, defendant-wife, appealed from the rulings and judgment against her.
*866 In his reasons for judgment, the district judge held:
"This court is of the opinion that, plaintiff not having established a home separate and apart from his family his suit for a separation from bed and board on the ground of abandonment must fall.
"The court is further of the opinion that, having alleged on October 10, 1952, that the matrimonial domicile was in New Orleans, and record No. 317-423 disclosing that the wife was in Louisiana as late as January 30, 1953, it can not give full faith and credit, and recognition, to the judgment of divorce obtained by the wife in Nevada.
"The court is further of the opinion that the evidence adduced by the wife in support of her alternative prayer for a separation from bed and board on the ground of cruel treatment is not sufficient, particularly in that it appears from the evidence that both parties were not without fault on December 20, 1952.
"For the reasons assigned there will be judgment dismissing the main and reconventional demands at the costs of plaintiff in suit."
We fully agree with our learned brother below. An analysis of his reasons for judgment show that he did not believe, from the facts, that the defendant-wife had established a residence in Las Vegas, Nevada; and we share in that belief, because after the dismissal of a previous suit on January 30, 1953, the wife immediately left for Las Vegas, Nevada. She was given two weeks' vacation, with pay. She was also granted a leave of absence, but she did declare that this leave of absence was forced on her by her employer. Shortly after obtaining the divorce in Nevada, she called her employer in New Orleans and wanted to come back to work here. At that time an opening was not available, and the employer suggested that she could work for a short time in Houston, Texas. She did go there to work for a few weeks as a rate clerk. She then returned to New Orleans and resumed her employment with the same company she was working for when she left New Orleans to go to Las Vegas, Nevada. She is presently located with this same company.
In the case of Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577, the United States Supreme Court held:
"Under our system of law, judicial power to grant a divorcejurisdiction, strictly speakingis founded on domicil. Bell v. Bell, 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804; Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L. Ed. 366."
The construction usually placed on this ruling of the United States Supreme Court is that a judgment of one state is conclusive upon the merits in every other state, only if the court of the state where judgment was rendered had jurisdiction. When the judgment is used as a plea in bar, as in the instant case, the state of the last matrimonial domicile has the right to determine whether a new domicile was established, in fact and in law.
On the merits of the instant case, we agree with the trial judge that the parties were mutually at fault, and his judgment was correct in dismissing the wife's reconventional demand. The parties should be left where their misconduct toward each other has placed them. Callahan v. Callais, 224 La. 901, 71 So.2d 320.
The record reflects that there was bickering and fussing, and it takes two to have a quarrel. The wife alleges that her husband drank excessively and called her insinuating names; the husband alleges that his wife wanted to go out socially too often and that he complained over the practice. These acts of misconduct, together with the throwing of a glass of water in the husband's face by the wife, were alleged to have occurred on December 20, 1952.
*867 Article 39 of the LSA-Civil Code states:
"A married woman has no other domicile than that of her husband; * * *."
Article 120 of the LSA-Civil Code states:
"The wife is bound to live with her husband and to follow him wherever he chooses to reside; the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life, in proportion to his means and condition."
In the case of Zinko v. Zinko, 204 La. 478, 15 So.2d 859, 860, this Court stated:
"The domicile of a married woman is that of her husband (R.C.C. Article 39); and she is legally obligated to live with and follow him wherever he chooses to reside (R.C.C. Article 120). And, as a general rule, suits between the spouses for divorce or separation from bed and board must be brought at the matrimonial domicile established for them by the husband. Barrow v. Barrow, 160 La. 91, 106 So. 705. Also recognizing said principles of law are Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Stevens v. Allen, 139 La. 658, 71 So. 936, L.R.A.1916E, 1115; George v. George, 143 La. 1032, 79 So. 832; Lepenser v. Griffin, 146 La. 584, 83 So. 839; and McGee v. Gasery, 185 La. 839, 171 So. 49. But these authorities announce, and some of them follow and apply, an exception to the general rule, which is that where the husband's conduct has been such as to furnish lawful grounds for a divorce the wife is justified in leaving him and acquiring a separate domicile; and on the bona fide establishment by the wife of such a separate domicile her marital status becomes subject to the jurisdiction of the courts of that domicile."
"* * * The courts of this State have been of the opinion, on innumerable occasions, that a married woman has no other domicile and can acquire no other than her husband's. Bruno v. Mauro, 205 La. 209, 17 So. 2d 253; Stevens v. Allen, 139 La. 658, 71 So. 936, L.R.A.1916E, 1115; Switzer v. Elmer, 172 La. 850, 135 So. 608.

* * * * * *
"The statutory rule that `a married woman has no other domicile than that of her husband' is based on the social and economic doctrine of marital unity and public policy demands that the civilized concept of the family unit be protected and made secure by permitting one family (husband and wife) to have only one domicile." Du Vernay v. Ledbetter, La.App., 61 So.2d 573, 575.
"Unless a husband abandon his wife or by reason of his misconduct force her to acquire a separate domicile, `a married woman has no other domicile, and can acquire no other, than that of her husband, and is bound to follow and live with him wherever he may choose to reside.' Stevens v. Allen, 139 La. 658, 71 So. 936, 937, L.R.A.1916E, 1115. See, also, Articles 39 and 120 of the Revised Civil Code; Pane v. Pane, 152 La. 415, 93 So. 246; Laiche v. His Wife, 156 La. 165, 100 So. 292; Switzer v. Elmer, 172 La. 850, 135 So. 608; McGee v. Gasery, 185 La. 839, 171 So. 49; and Plitt v. Plitt, 190 La. 59, 181 So. 857." Bruno v. Mauro, 205 La. 209, 17 So.2d 253, 254.
Judgment affirmed.
HAMITER, Justice (dissenting in part and concurring in part).
Since the record fails to affirmatively show that defendant (the wife) did not establish the requisite domicile in Las Vegas, the presumption that the Nevada court had jurisdiction in her divorce action of the subject matter and the persons has not been overcome. I am of the opinion, therefore, that defendant's Nevada divorce decree should be recognized and given full faith and credit in this cause. Otherwise, I concur in the holding of the majority.