HALL, Judge.
Plaintiff, Charlene F. Tjaden, a resident of Marshall, Texas, filed suit against defendant, Lawrence Owen Tjaden, a resident of Bossier Parish, Louisiana, seeking a settlement of community property, alimony for herself and child support for her two children. Plaintiff further sought a temporary restraining order and ultimately a preliminary and permanent injunction restraining defendant from encumbering or disposing of any community property. It is alleged in plaintiff’s petition that she and defendant were married in Kansas in 1959, and remained married until March 13, 1973, when plaintiff obtained a divorce in the State of Nevada. It is alleged that community property was acquired during the marriage and that two children were born of the marriage, both boys, ages eight and ten.
A rule issued directed to the defendant ordering him to show cause why a preliminary injunction should not be granted and why he should not be ordered to pay ali•mony pendente lite for the support of plaintiff during the pendency of the proceedings in the amount of $500 per month and child support for the support of the two minor children during the pendency of the proceedings in the amount of $400 per month.
Defendant filed an answer to the petition and rule alleging the divorce decree obtained by plaintiff in the State of Nevada is null and without force and effect because plaintiff was not a bona fide resident or domiciliary of the State of Nevada and the Nevada court was without jurisdiction. Alleging that the parties are still married, defendant prayed for rejection of all of the plaintiff’s demands. Defendant further alleged his inability to pay the alimony and child support sought by plaintiff and alleged his willingness to provide for his wife and children in his home.
At the trial of the rule, it was agreed that the issues to be tried were the validity of the Nevada divorce decree and the amount of child support pendente lite, all other issues to be reserved until trial on the merits. After trial, in a written opinion, the district court held defendant was entitled to collaterally attack the validity of the Nevada divorce decree, that under Nevada law residence in that state must be bona fide with the intention of remaining there permanently or at least indefinitely, that plaintiff’s action in leaving Nevada the day following rendition of the divorce decree in that state negates any intention on her part to remain there permanently or indefinitely, and that plaintiff’s demands should, therefore, be rejected. Judgment was rendered accordingly and plaintiff perfected a devolutive appeal.
The primary and threshold issue presented by this appeal is whether the Nevada divorce judgment must be or should be recognized and enforced in Louisiana. For reasons expressed in this opinion, we reverse the decision of the district court on this issue and hold the Nevada judgment is entitled to full faith and credit and to be enforced in this state. This holding necessitates a consideration of the issue of the amount of child support.
Based on the evidence, we find the pertinent facts to be as follows:
Prior to their separation in December, 1972, plaintiff and defendant and their two young sons were living in Bossier City, Louisiana, in a home recently constructed by them. Together they operated an Arthur Murray Dance Studio in Shreveport. Marriage problems developed and shortly before their separation plaintiff consulted *849 an attorney and the possibility of a Nevada divorce was discussed.
There was discussion between plaintiff and defendant about him moving out of their home which he refused to do. On December 18, plaintiff, with her two children and their personal belongings, left home and traveled by bus to Las Vegas, Nevada, where her mother and brother lived. She stayed with her brother for the first week and then moved into her mother’s home, where she remained continuously until March 14, 1973, the day after the Nevada divorce decree was rendered. She did not leave the State of Nevada during that time.
Plaintiff went to Las Vegas because of the problems she and her husband were having, to get away for awhile because of her health as she was emotionally upset, to rest, and to seek a divorce. She consulted an attorney in Nevada, who wrote to defendant on January 10. Suit for divorce on the grounds of incompatibility was filed in Nevada and defendant was served with a summons and a copy of the complaint on February 20. On March 13, a decree of divorce was rendered by the Nevada court.
On March 14, plaintiff, en route to Marshall, Texas, flew to Shreveport, the nearest airport, and was driven from the airport directly to Marshall, a city in East Texas about forty miles from Bossier City. She lived in a motel there for about a week until she rented an unfurnished house, where she and the children have lived since that time. She intends to move into a house in another neighborhood before school starts in September.
The principles of law applicable to the issue presented in this case were recently summarized by this court in Hampson v. Hampson, 271 So.2d 898 (La.App.2d Cir. 1973):
“Anyone at interest has the right to collaterally impeach a decree of divorce rendered in another state by proving that the court had no jurisdiction.1 [x An exception or limitation to this rule exists where the party against whom the divorce judgment was rendered made an appearance, executed a waiver or otherwise participated in the proceedings in the other state, thereby precluding a coh lateral attack on the judgment in the other state. Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951); Boudreaux v. Welch, 249 La. 983, 192 So.2d 356 (1966); Reeves v. Reeves, 209 So.2d 554 (La.App. 2d Cir. 1968). The exception has no application in the instant case as plaintiff did not participate in any manner in the Arkansas proceedings.] The judicial power to grant a divorce, that is, jurisdiction, strictly speaking, is founded on domicile. The only question which the courts of this state can consider with respect to a decree of the courts of another state is the jurisdictional requirement of domicile. Louisiana courts will give full faith and credit to divorce decrees rendered by courts of other states except where it has been conclusively shown by sufficient proof that the court rendering the decree did not have the jurisdictional requirement of domicile. The burden of undermining the decree of the other state rests heavily upon the assailant. Williams v. State of North Carolina, 325 U. S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946); Juneau v. Juneau, 227 La. 921, 80 So.2d 864 (1955); Turpin v. Turpin, 175 So.2d 357 (La. App. 2d Cir. 1965).”
There is no dispute that defendant is entitled to collaterally attack the Nevada divorce decree as he did not make an appearance, execute a waiver, or otherwise participate in or acquiesce in the Nevada proceedings.
Both parties agree that the Nevada law relating to residence or domicile necessary to confer jurisdiction in divorce cases requires physical presence of the party in that state for the entire statutory period of *850 six weeks prior to and including the commencement of the action, accompanied by an intent to make Nevada the party’s home and to remain there permanently, or at least for an indefinite time. Thus, it appears that Nevada law is consistent with traditional definitions of domicile, requiring actual presence together with an element of intent.
There is no question aboijt plaintiff’s actual presence in Nevada during the required period of time. The inquiry, then, narrows down to whether defendant bore his heavy burden of proving a lack of intent on the part of plaintiff to make Nevada her home and to live there permanently or indefinitely.
Defendant correctly argues that a person’s intent can usually be determined only from the person’s actions. Crichton v. Krouse, 142 So. 635 (La.App. 2d Cir. 1932). Defendant points out that plaintiff talked to a lawyer in Louisiana about a Nevada divorce before leaving home, she told her husband she was going to Nevada to rest and seek a divorce, she employed a Nevada lawyer a few days after arriving in Nevada, she filed suit and obtained the judgment in the shortest possible period of time, and returned to the Shreveport-Bossier area the next day after the divorce decree was rendered. Defendant argues these actions by plaintiff negate any intent on her part to make Nevada her home or to live there permanently or indefinitely, but, to the contrary, evidence her intent to stay in Nevada only long enough to obtain a divorce which she could not have obtained in Louisiana.
On the other hand, plaintiff points out she had close family in Nevada and the logical place for her to go and make her home upon deterioration of her marriage was with her mother. She did, in fact, make Nevada her home. She stayed in Nevada until after the divorce was granted and never returned to Louisiana. She had no residence or domicile in Louisiana or anywhere other than Nevada during the period she lived in that state. Plaintiff argues these actions manifest an intention on her part to abandon her Louisiana domicile and to establish a domicile elsewhere.
Defendant cites several Federal and Louisiana cases in which out-of-state divorce judgments were not accorded full faith and credit because of lack of jurisdiction of the out-of-state court.
In the landmark case of Williams v. State of North Carolina, supra, the United States Supreme Court held that “Domicil implies a nexus between person and place of such permanence as to control the creation of legal relations and responsibilities of the utmost significance”. It was held that where the constitutional issue of full faith and credit is raised, “the proper criteria for ascertaining domicil, should these [matters] be in dispute, become matters for Federal determination”. The court' approved the trial judge’s instruction to the jury that domicile is “that place where a person ‘has voluntarily fixed his abode . not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time’ ”.
The facts in Williams were that appellants, long-time residénts of North Carolina, came to Nevada where they stayed in an auto-court for transients, filed suits for divorce as soon as the Nevada law permitted, married one another as soon as the divorces were obtained, and promptly returned to North Carolina to live. The court held the jury could reasonably conclude from the evidence that appellants went to Nevada solely for the purpose of obtaining a divorce and intended all along to return to North Carolina, which intention would preclude acquisition of domiciles in Nevada. North Carolina was not required to give full faith and credit to the Nevada divorce judgment.
In Juneau v. Juneau, 227 La. 921, 80 So.2d 864 (1955) the court refused to *851 give full faith and credit to a Nevada divorce decree obtained by the wife. The husband and wife who were domiciled in Louisiana separated on December 20, 1952, and on January 30, 1953, a suit instituted in Louisiana between them was dismissed by consent of the parties. The next day, January 31, 1953, the wife left for Las Vegas, Nevada, where she filed for divorce after an alleged six weeks residence and was granted a divorce by default on the ground of mental cruelty on April 9, 1953. When she left Louisiana she was given two weeks vacation with pay and was also granted a leave of absence by her employer. Shortly after obtaining the divorce in Nevada, she called her employer in New Orleans and wanted to come back to work there. At that time an opening was not available and she worked for a short time in Houston but then returned to New Orleans and resumed her employment with the same company. The court held that the wife had not established a residence in Nevada. The court apparently relied to some extent on LSA-Civil Code Art. 39 which provides that a married woman has no other domicile than that of her husband, but this legal fiction is not to be considered in determining jurisdiction based on domicile for purposes of full faith and credit. Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942).
In Eaton v. Eaton, 227 La. 992, 81 So.2d 371 (1955) certiorari denied 350 U.S. 873, 76 S.Ct. 116, 100 L.Ed. 772 (1955), the court refused to recognize the validity of an Arkansas divorce. The evidence in that case clearly showed that the husband who obtained the Arkansas divorce never lived in Arkansas at all but was living in Louisiana first with his wife and then with another woman during the months prior to the rendition of the Arkansas decree. The primary issue in this case was whether the wife was estopped from attacking the validity of the Arkansas divorce by reason of having signed a waiver of appearance.
In State v. Wenzel, 185 La. 808, 171 So. 38 (1936) the court held that a Mississippi court was without jurisdiction to render a divorce judgment where both parties admitted that they were residents of New Orleans, Louisiana, prior to their marriage, during their marriage up to the date of their separation, and that neither ever acquired a residence or domicile elsewhere.
In Austin v. Austin, 192 So.2d 890 (La. App. 2d Cir. 1966) the wife filed suit in Louisiana for separation from bed and board and the defendant husband filed an exception of no right of action setting up as a bar to plaintiff’s suit a final divorce decree granted to him in Arkansas. This court held the Arkansas court was without jurisdiction and overruled the exception. The husband rented a two-room apartment without kitchen facilities in Magnolia, Arkansas on October 1, 1965. His children remained in Shreveport at the matrimonial domicile. His work required him to travel and he made weekly visits to Shreveport. He filed suit for divorce sixty-three days after arriving in Arkansas, and returned to Shreveport, January 15, 1966, the day after the Arkansas decree was rendered.
In Thompson v. Thompson, 212 So.2d 183 (La.App. 3d Cir. 1968) writ denied 252 La. 950, 215 So.2d 125 (1968) the court refused to give full faith and credit to an Ohio divorce judgment where the wife left Louisiana and moved to Ohio, but was in Ohio less than the required one-year period prior to filing the divorce suit there. Since the residence requirement was not fulfilled, the Ohio court was without jurisdiction.
In Duke v. Duke, 216 So.2d 834 (La.App. 2d Cir. 1968) this court held that an Arkansas court was without jurisdiction where the husband rented a room in a hotel in Arkansas for the required residence period but continued to operate a service station in Shreveport.
In Ford v. Ford, 286 So.2d 385 (La.App. 2d Cir. 1973) this court held that the husband did not establish or maintain a residence in the State of Arkansas within the meaning of the provisions of the appli *852 cable statutes of that state. He rented a room at a motel but continued in his employment in Homer, Louisiana, to which he commuted daily. The day following the divorce he returned to Homer. He admitted his main reason for moving to Arkansas was not to establish a domicile but to get a divorce. A most substantial portion of the husband’s time was spent in Louisiana.
Plaintiff cites several cases in which divorce judgments of other states have been recognized and enforced in Louisiana.
Aarnes v. Aarnes, 172 La. 648, 135 So. 13 (1931) involved the validity of a Nevada divorce obtained by the husband. The husband testified he moved to Nevada with the intention of permanently residing there. He established a bank account in Reno, purchased a full year’s Nevada automobile license for his car and continued to reside in Nevada after obtaining the judgment of divorce. He was remarried in Nevada and his marriage certificate shows him as a resident of Reno. The court held the wife failed to sustain the burden of proving bad faith on the part of her husband by a fair preponderance of the evidence and accorded the Nevada judgment full faith and credit.
In Voorhies v. Voorhies, 184 La. 406, 166 So. 121 (1936) the court accorded a Nevada divorce decree full faith and credit. The husband resigned his position with a company in Louisiana, stated to his wife and others that he intended to leave Louisiana permanently and establish a domicile elsewhere and that he expected to institute proceedings for divorce. He left Louisiana in October, 1929, and went to Reno where he obtained a divorce on April 28, 1930. He attempted to find employment and to promote a business in Reno but was unsuccessful, went to California for a while, returned to Reno and then went to Houston where he finally found employment. He was transferred by his company back to Louisiana in 1934. In finding' that he was a bona fide resident of Nevada, the court noted that if he went to the State of Nevada for the sole purpose of obtaining a quick, easy divorce with no intention of residing there permanently, the judgment obtained there would be null and void. On the other hand, simply because he went to that state in order to facilitate his obtaining a divorce and took advantage of the laws which his new domicile afforded him would not be grounds for holding that he did not establish a bona fide residence in that state.
Navarrette v. Laughlin, 209 La. 417, 24 So.2d 672 (1946) involved the validity of a Mississippi divorce. In holding the Mississippi court had jurisdiction, the court found the husband resided in Mississippi more than one and a half years prior to the time the decree of divorce was rendered and continued to reside there after the divorce and did not return to Louisiana, but went to Florida and engaged in business and remained there some six months. He was absent from Louisiana at least two years. Although the evidence .showed he maintained some contacts with the State of Louisiana, the court held that evidence was not sufficient to overcome the positive proof that he actually resided in Mississippi.
In Walker v. Walker, 157 So.2d 476 (La.App. 3d Cir. 1963) affirmed in part, reversed in part, 246 La. 407, 165 So. 2d 5 (1964) the court accorded an Arkansas divorce decree obtained by the husband full faith and credit. The parties lived in Shreveport where the husband was employed as a traveling salesman with a territory including parts of East Texas, North Louisiana, South Arkansas and part of Mississippi. They separated in January, 1961, at which time the wife moved to Lafayette and the husband moved to an apartment in Texarkana, Arkansas. The husband actually rented and occupied an apartment there, he used and paid for utility services, he opened a bank account there and during the week days he traveled throughout the territory but on the weekends he returned to his apartment *853 in Texarkana. There was no evidence he had any other home or domestic establishment except the apartment in Arkansas. He was still living there almost a year after he moved. The court held Arkansas was his actual residence as well as the place which he intended to be his principal establishment or home and, therefore, the Arkansas court had jurisdiction.
In Gilbert v. Cowan, 180 So.2d 63 (La. App. 2d Cir. 1965) this court accorded full faith and credit to an Arkansas divorce judgment obtained by the wife. The parties separated on March 11, 1961 and the wife moved to Pine Bluff, Arkansas with her four children and her household belongings. She established a residence and retained such residence until August 20, five days after obtaining a divorce judgment, at which time she moved to Alexandria, Louisiana, where two days later she remarried.
Staples v. Staples, 232 So.2d 904 (La. App. 2d Cir. 1970) also involved an Arkansas divorce judgment. On April 3, 1968, the wife left Louisiana, the state of the matrimonial domicile and began residing with her aunt and uncle in Arkansas. On June 11, 1968, she filed an action for divorce and judgment of divorce was rendered on August 28, 1968. On the same date as rendition of the divorce, she left Arkansas and returned to Louisiana. The defendant testified that she did not go to Arkansas for the express purpose of obtaining a divorce, and only decided to return to Louisiana so that the child she was carrying would be born in this state rather than Arkansas. The validity of the divorce was recognized by this court, applying the Arkansas statutory standard of actual residence for three months rather than the Louisiana requirement of domicile.
The validity of an Arkansas divorce decree was again considered by this court in Hampson v. Hampson, 271 So.2d 898 (La. App. 2d Cir. 1972). The husband moved from the matrimonial domicile in Shreveport to Taylor, Arkansas in January, 1968. He rented a room and lived in and spent most nights in the room. He opened a bank account in Arkansas, did considerable business with a local service station and sent and received mail at his Arkansas address. The defendant testified he did not intend to remain permanently in Taylor, but did intend to remain permanently in Arkansas with the hope of opening a business in Hot Springs. During the period he continued to work at a plant near Minden, Louisiana, which was a forty-five minute to one hour drive from his residence in Arkansas and he also maintained a second bank account in Shreveport and moved back to Sheveport immediately after obtaining the divorce. In spite of the language used in Staples, this court reaffirmed its right to make its own determination of whether the Arkansas court had jurisdiction based on domicile. Compliance with the Arkansas statute, defining residence as actual presence which is equated to domicile as a matter of public policy of that state, was mentioned as a primary but not sole criteria. This court concluded that the wife failed to bear the heavy burden of proving that defendant did not have his actual residence or domicile in Arkansas and held the Arkansas court had jurisdiction.
Both Staples and Hampson have been criticized as having departed from an application of traditional definitions of domicile because of lesser requirements made in another state’s statute. See Pascal, 31 L. L.R. 314 (1971) and 34 L.L.R. 323 (1974). To the extent that these decisions relied on the Arkansas statute’s definition of domicile or residence, they are not applicable to the present litigation involving Nevada law, which conforms to traditional concepts of domicile.
The foregoing review of the jurisprudence dealing with recognition of foreign divorces reveals that Louisiana courts have consistently expressed adherence to the well-established principles of -law set forth earlier in this opinion in the quotation from Hampson. It also becomes clear that *854 the courts, within the framework of these principles, have decided each case on its own particular facts, giving due weight to the heavy burden of proof borne by the assailant of the out-of-state divorce decree.
In the case now before this court, our review of the evidence leads us to the conclusion defendant has failed to bear his heavy burden of proving by sufficient and convincing evidence that plaintiff did not have her domicile in Nevada when the divorce action was commenced in that state.
There is no question of plaintiff’s actual presence in Nevada for the required period of time. She moved there with her children and their personal belongings. She actually made her home and principal establishment there for almost three months. Very significantly, she had a good and logical reason for going to Nevada other than to obtain a divorce — to live with her mother who was a long-time resident of Nevada. That she also intended to avail herself of Nevada’s liberal divorce laws while there is not of itself a sufficient basis for holding she did not establish a domicile in that state.
There is no evidence she intended to retain a domicile in Louisiana — her actions being to the contrary. She left Louisiana and had not returned at the time of trial of this action — apparently intending to stay in Texas since she had plans to find another house there before school starts next fall.
The primary fact relied on by defendant and by the district court in its opinion is that plaintiff left Nevada the day after the divorce decree was rendered and returned to the “Shreveport area”. While this fact lends support to defendant’s case, we do not regard it as conclusive of plaintiff’s intent while in Nevada. This action on her part is removed in time from the commencement of the action in Nevada, which is the determining time for purposes of the Nevada court’s jurisdiction. While Marshall, Texas is not far from the Shreveport-Bossier area, it is certainly not a part of the metropolitan area and is in another state. She never returned to her former Louisiana domicile.
It is to be noted that in most of the cases in which recognition of an out-of-state divorce has been refused, the party either never physically resided in the other state, or never actually severed his ties with Louisiana, or went to the other state solely for the purpose of getting a divorce with no other reason for going and promptly returned to Louisiana after obtaining the divorce. None of these factors exist here.
We conclude the evidence is insufficient to prove plaintiff did not intend to make Nevada her home, at least indefinitely, after leaving Louisiana and through the commencement of her action in Nevada. The Nevada judgment is entitled to be accorded full faith and credit and to be recognized in Louisiana.
Having concluded the Nevada divorce judgment is valid, it is necessary to consider the issue of the amount of child support, pendente lite, which defendant must pay, an issue not reached by the district court in view of its decision on the validity of the Nevada divorce.
 The law is well settled that it is the obligation of both the mother and the father to support, maintain and educate their children. LSA-C.C. Arts. 227 and 230. In determining the amount of child support to be awarded, the court must take into consideration the needs of the children and the circumstances of those who are obligated to pay the support. LSA-C.C. Art. 231.
Although she carried on responsible duties with the Arthur Murray Dance Studio prior to the parties’ separation, plaintiff has not been employed since the divorce. She made one unsuccessful effort to work for a company selling women’s undergarments. Her only income has been money given to her by her mother.
*855 Plaintiff prayed for an aw-ard of $400 per month for the two boys. She testified her estimate was $300 per month as a bare minimum for necessities. She detailed necessary expenses of approximately $250 per month’, consisting of a portion of the rent, food, clothing, haircuts and miscellaneous items.
Considering the defendant’s ability to pay, the joint income tax return filed by plaintiff and defendant for 1972 showed a gross income of the dance studio for 1972 as $74,717.76, with expenses of $69,118.31, leaving a net income of $5,599.45. It is to be noted, however, that in 1972, the parties had a new home constructed for which they paid approximately $13,400 in cash and borrowed $30,000. The cash payment came from income of the dance studio. A statement of income and expenses for the dance studio for the first five months of 1973 showed a gross income of $50,243.32, with expenses of $51,448.74, or a net loss of $1,205.42. Although defendant contends he is losing money in 1973, it is to be noted that his gross income is up substantially. Defendant could shed very little light on the details of his accounting or the nature of the expense items shown on the statements and it seems obvious, particularly from his transactions in 1972, that he is able to provide for the support of his children.
On the basis of the evidence in the record, we conclude that defendant should pay the sum of $250 per month for the support of his children, pendente lite. This conclusion does not preclude an independent judgment as to the amount of permanent child support on the basis of evidence that may be adduced at the trial on the merits of this cause.
For the reasons assigned the judgment of the district court is reversed and it is ordered, adjudged and decreed that the decree of ^divorce between Charlene F. Tja-den and Lawrence Owen Tjaden rendered March 13, 1973, in the Eighth Judicial District Court for the County of Clark, State of Nevada, in Proceeding No. A109571 be recognized as valid and accorded full faith and credit in the State of Louisiana. It is further ordered, adjudged and decreed that defendant, Lawrence Owen Tjaden, pay unto plaintiff, Charlene F. Tjaden, the sum of $250 per month for the care and support of the minor children, Mark Tjaden and Brent Tjaden, during the pendency of this litigation.
It is further ordered, adjudged and decreed that this cause be remanded to the Twenty-Sixth Judicial District Court in and for Bossier Parish, Louisiana, for further proceedings in accordance with law and consistent with this opinion.
The costs of appeal are assessed to the defendant-appellee.
Reversed, rendered and remanded.