(74 South. 554)

No. 22307.

STATE v. FICK.

(Jan. 15, 1917. Rehearing Denied March 12, 1917.)

*(Syllabus by the Court.)*

CRIMINAL LAW ☞108(1) — NONSUPPORT OF CHILD—OFFENSE—VENUE.

The offense of deserting and neglecting to provide for the support of a minor child, as denounced by Act No. 34 of 1902, is committed, not at the place to which a deserted wife, having the child in custody, may be compelled to go, in order to find the support which the husband and father fails to provide, but at the place where he is to be found, when, and so long as, his desertion and neglect occur and continue, and the lawful removal of the wife and child from one place to another operates no change of venue.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 220–226, 230, 234.]

Appeal from Juvenile Court, Parish of Orleans; Andrew H. Wilson, Judge.

Joseph Fick was convicted of willfully neglecting and refusing to provide for the support of his destitute minor child, and he appeals. Affirmed.

Loys Charbonnet and Edward J. Ryan, both of New Orleans, for appellant. A. V. Coco, Atty. Gen., and Chandler C. Luzenberg, Dist. Atty., and Eugene Stanley, Asst. Dist. Atty., both of New Orleans (V. A. Coco, of Marksville, of counsel), for the State.

## Statement of the Case.

MONROE, C. J. Defendant, having been convicted of willfully neglecting and refusing to provide for the support of his minor child, in destitute and necessitous circumstances, and sentenced to pay a fine of $100, or suffer imprisonment for six months, prosecutes this appeal. It appears from the proceedings, made part of certain bills of exception, that he was married in New Orleans, where he then lived, and now lives, in October, 1908, and that he and his wife resided together in that city until September, 1909, when, on account of alleged ill treatment, she abandoned him and the domicile that he had provided, and took their minor child, then two months old, with her; that she, however, remained in New Orleans, and, in November, 1909, filed an affidavit, in the juvenile court, charging defendant with nonsupport of the child, upon which charge he was convicted and sentenced to pay alimony, for the child's support, at the rate of $5 per week, which he paid until March, 1910, when his wife moved with the child to Baton Rouge, in order, as she says, to earn a livelihood and secure peace of mind; that in October, 1910, defendant, who appears to have made no payments after the hegira of his wife and child, applied to the court for a reduction in the amounts that he was ordered to pay, and they were accordingly reduced, from $5, to $3.50 per week, but were no more made after the reduction than before; and, in October, 1916, the assistant district attorney for the parish of Orleans filed an information in the juvenile court, charging defendant with nonsupport of the child, as of

date October 7, 1916, to which he pleaded that the court was without jurisdiction either to grant the alimony or to award the custody of the child to the mother, for the reason that both mother and child resided out of the parish of Orleans and in the parish of East Baton Rouge. After hearing evidence and argument, on October 18, 1916, the court overruled the plea to its jurisdiction, found defendant guilty, and ordered him to pay to the criminal sheriff $10, upon the 1st and 15th of each succeeding month, for the support of the child (the same to be collected by the mother), that he be released on furnishing a bond conditioned that he would appear when required during the following year and would comply with said order, and that the mother have the custody of the child. Defendant applied for appeals both from the judgment overruling the plea to the jurisdiction and from that which followed, and, his applications having been denied on the ground that the judgments were not final, he excepted and offered bills for signature, which, upon the same ground, the judge refused to sign. He then gave notice of his intention to apply to this court for writs of certiorari, etc., but does not appear to have done so; and thereafter on November 9th, the assistant district attorney filed a rule, alleging that defendant had been ordered to pay alimony, as above stated, and had been discharged on his bond, upon his promise to comply with the order, but that he had failed and refused so to comply, and praying that he be required to show cause why the judgment of the court should not be executed against him. The rule was made returnable on November 13, 1916, and on that day defendant filed a plea to the jurisdiction, similar to that previously filed, which having been· overruled, he reserved bills of exception that were subsequently prepared by his counsel and signed by the judge. The court, then, after hearing evidence and argument, ordered that the rule be made absolute, and that defendant be fined $100, or imprisoned for six months, the fine, if paid, to go to his wife for the support of the child, and thereupon he took the appeal.

## Opinion.

The bills of exception last above mentioned reserved to defendant the benefit of his plea to the jurisdiction, and of his objection to the admission of evidence on the ground that the court was without jurisdiction. The question of jurisdiction is therefore the only one that it is necessary for us to decide. For a better understanding of that question, as here presented, it may not be unprofitable however, in considering the law which confers jurisdiction on the juvenile court and the decisions of this court construing the same, to at least mention some other decisions concerning questions not included in defendant's bills.

Act 34 of 1902 makes "it a misdemeanor to desert or willfully neglect to provide for the support and maintenance by any person of his wife or minor children in destitute or necessitous circumstances," and provides a penalty therefor; and it contains certain provisions which authorize the court vested with jurisdiction in cases arising under it to deal with them tentatively, with a view, first, of determining whether the person charged therewith is guilty of the offense denounced by the statute (which, for brevity, we will call, "nonsupport"), and, next, if he be found guilty, of affording him an opportunity to do that which he offends by not doing and in the meanwhile to suspend the imposition of the penalty of fine and imprisonment provided by the statute. Thus the statute after defining the offense and fixing the penalty, reads in part:

"Provided that before the trial (with the consent of the defendant) or after conviction, instead of imposing the punishment hereinbefore provided, or in addition thereto, the court in

its discretion having regard to the circumstances and financial ability of the defendant, shall have the power to pass an order, which shall be subject to change by it from time to time as the circumstances may require, directing the defendant to pay a certain sum weekly for the space of one year to the wife, and to release the defendant from custody on probation for the space of one year upon his entering into a recognizance, with or without sureties, in such sum as the court shall direct. * * * If the court be satisfied by information and due proof under oath, at any time during the year, that the defendant has violated the terms of such order, it may forthwith proceed to the trial of the defendant under the original indictment, or sentence him under the original conviction, as the case may be. * * *"

The constitutional provisions creating the juvenile courts and conferring jurisdiction on them are found in article 118, Const. 1913, which, among other things, declares that:

"Sec. 3. Said court shall also have jurisdiction of all cases of desertion or nonsupport of children by either parent. * * *"

"Sec. 1. Appeals from the said court shall be allowed upon matters of law only and shall be direct to the Supreme Court."

The refusal of the court a qua to grant the appeals first mentioned in the foregoing statement of the case was therefore predicated upon the general rule that an appeal does not lie from an interlocutory judgment unless it works irreparable injury, and upon the above-quoted statute, as construed by this court in State v. Mioton, 112 La. 180, 36 South. 314, and other cases, in which it is held that the preliminary order, directing the defendant to make weekly payments, is not the final judgment in the case, and is not appealable. It may also be stated that it has been held by this court that Act 34 of 1902 contemplates that a man shall, at all times, provide for his wife and children in destitute or necessitous circumstances, and that his neglect to do so, during a period of time not covered by a conviction already secured, is a distinct offense to which the plea of autre fois convict, predicated upon the prior conviction, is not good. In re Baurens, 117 La. 136, 41 South. 442. Coming now to the precise question to be here decided, it is

(as we understand from the bills of exception), that the removal of defendant's wife, carrying the child, from the parish of Orleans to the parish of East Baton Rouge shifted the venue of the offense with which defendant is charged from the one parish to the other, and devested the juvenile court for the parish of Orleans of jurisdiction of the same. We take it, however, that the offense of deserting and willfully neglecting to provide for the support of a wife and child, as denounced by the act of 1902, is committed, not at that place to which the deserted wife and child may be compelled to go, by reason of such desertion and neglect, in order to obtain the means of livelihood, but at the place where the husband is to be found, when, and so long as, his desertion and neglect continues; for it is the desertion and neglect that constitutes the offense, and not the being deserted and neglected. When, therefore, the husband and father deserts his wife and child at the place of the matrimonial domicile, and they go elsewhere in order to obtain the means of subsistence which he has denied them at such domicile, there is no law which changes the venue of the offense and either deprives the one court of jurisdiction thereof or confers such jurisdiction on the other. Where the wife is compelled to leave the domicile of the husband by reason of ill treatment, she is at liberty to select a domicile for herself, and, if she is made the legal custodian of a minor child of the marriage, she may take the child with her, unless there is some prohibition or condition in the decree awarding her such custody which would prevent her from so doing; and she and the child continue to be the beneficiaries of the law, which requires the husband and father to provide for their support, wherever they may lawfully reside, and he remains liable for such support wherever he may remain or

may choose to remove himself, within the reach of Act 34 of 1902.

In State v. Baurens, supra, it was said by this court:

"It is the duty of the husband and father to provide for the support of his wife and minor children, in necessitous circumstances, at the matrimonial domicile, and that obligation is not discharged if, by reason of his cruel treatment, the wife is compelled to find shelter, with her minor children, at the house of her father, in a neighboring parish, nor does any change of venue, as to the offense of neglecting to provide, etc., denounced by Act No. 34, p. 42, of 1902, result from that circumstance."

Counsel for the state cite also the cases of Bayne v. People, 14 Hun (N. Y.) p. 181; State ex rel. Draker v. Bergen, 36 Hun (N. Y.) 241; State ex rel. Delevan v. Justus, 85 Minn. 115, 88 N. W. 415; Commonwealth v. Douglas, 2 Lanc. Law Rev. (Pa.) 179, in support of the proposition that neither the deserted wife nor the state can change the venue of the offense in question and confer jurisdiction upon the court of the place to which the wife may remove.

"That she cannot so do [said the court in State ex rel. Delevan v. Justus] is too obvious to justify any discussion of the proposition, for this case does not fall within the limited class of cases in which a party may become liable to punishment in a particular jurisdiction while his personal presence is elsewhere; for example, circulating a libel in a county in which he is not personally present. If the relator deserted his wife, abandoned her, and omitted to support her, such acts were done and omitted in the county of Hennepin [the county of his domicile], and not in the county of Ramsey [to which the wife had removed]."

We are therefore of opinion that there is no error in the judgment herein appealed from, and it is accordingly affirmed.