JULIAN E. BAILES, Judge.
Decedent, Mrs. Elizabeth Kieran, wife of Max Koerkel, died October 23, 1959, in the City of New Orleans. Mrs. Uleen Bloecher, wife of Cecil R. Dellinger, initiated proceedings in the district court to have decedent’s last will and testament filed and ultimately probated, and also applied for authority to take inventories of decedent’s property in the parishes of Orleans and St. Tammany. In her initial petition, petitioner alleged that decedent was domiciled in Orleans Parish. Subsequent to the taking of inventories, petitioner, by appropriate pleading, asked for the probation of the last will.
Responsive to this petition, Max Koerkel, surviving husband of Mrs. Elizabeth Kier-an, and a resident of St. Tammany Parish, filed an exception to the jurisdiction of the court, alleging that decedent’s domicile was in St. Tammany Parish, for the reason that exceptor’s domicile is so located. Further, he excepted to the probation of the will, on the ground that it is null, void and of no force or effect for lack of date, as required by LSA-C.C. Article 1588.
After the trial of the exception to the jurisdiction, judgment was rendered overruling the exception, and subsequent to that, there was judgment declaring the last will and testament duly proved. From these two judgments, this appeal is prosecuted.
The assignments of error are: First, that the lower court erred in dismissing the plea to the jurisdiction of the court, for the reason that the wife can have no other domicile than that of the husband; and the other is that the court erred in upholding the validity of the last will' and testament.
We will consider first the question of decedent’s domicile, because, if we determine that her domicile was not in Orleans’ Parish, there will be no need to consider the question of validity of her last will and testament.
There is a well-established principle of law that the domicile of a wife is that of the husband.
LSA-C.C. Article 39 provides:
“A married woman has no other domicile than that of her husband; * * * »
There are a vast number of judicial enun-ciations applying and affirming the plain provision of this article of the Civil Code. The latest we find is that in Bush v. Bush (1957), 232 La. 747, 95 So.2d 298, in which Justice Hamiter said, on page 299:
“* * * Next, plaintiff assigns error to the court’s sustaining the exception to the jurisdiction ratione personae, he directing particular attention to provisions of the Revised Civil Code that ‘The wife is bound to live with her husband and to follow him wherever •he chooses to reside. * * *’ (Article 120) and ‘A married woman has. no other domicile than that of her husband * * *’ (Article 39).
“[2] Unquestionably, these provisions, which presuppose that the husband will maintain a residence to which the wife can in good conscience go and. is welcomed (Revised Civil Code Article 120, partially, quoted supra, also-provides that ‘the husband is obliged to receive her and to furnish her with whatever is required for the convenience of life’), state the general rule which has often been recognized by this, court. Stevens v. Allen, 139 La. 658, *692 71 So. 936, L.R.A.1916E, 1115; Pane v. Pane, 152 La. 415, 93 So. 246; McGee v. Gasery, 185 La. 839, 171 So. 49; Bruno v. Mauro, 205 La. 209, 17 So.2d 253. But an exception to the rule, many times also recognized in our jurisprudence, is that a wife is authorized to acquire a separate domicile for herself where she is abandoned or is compelled by reason of ill treatment to leave her husband. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Stevens v. Allen, supra; State v. Fick, 140 La. 1063, 74 So. 554; George v. George, 143 La. 1032, 79 So. 832; Succession of Lasseigne, 143 La. 1095, 79 So. 873; Lepenser v. Griffin, 146 La. 584, 83 So. 839; McGee v. Gasery, supra; Zinko v. Zinko, 204 La. 478, 15 So.2d 859; Bruno v. Mauro, supra; and Juneau v. Juneau, 227 La. 921, 80 So.2d 864.
“[3] With further reference to such general rule and the exception thereto the following observations of this court are pertinent: ‘The marital obligation imposed by article 120 of the Civil Code, that the wife is bound to live with her husband and to follow him wherever he chooses to reside, must be construed with reference to the obligations of the husband, and with reference to the right of the wife to put an end to the matrimonial relation for any one of the causes specified in article 138 of the Code.’ Cuny v. Cuny, 146 La. 711, 83 So. 906, 907. (See also Champon v. Champon, 40 La.Ann. 28, 3 So. 397.) '* * * The reason of the rule is founded on good morals; * * *. But where the husband abandons her, and chooses to go and reside with another consort, the reason for the rule disappears. The wife cannot follow him, and to hold that her domicile is in a place where good morals prevent her from residing would be to sacrifice the purpose of the rule in order to adhere to its words.’ Succession of Lasseigne, supra [143 La. 1095, 79 So. 874], ‘ * * * The aphorism that the domicile of the husband is that of the wife does not express the law accurately. What is meant by the maxim is that, if there be a matrimonial domicile, it is also the domicile of the wife; for, if there be no matrimonial domicile, the husband and wife may have separate domiciles, or be subject each to a separate jurisdiction, ratione personae. * * * ’ Clark v. Clark, 145 La. 740, 82 So. 875, 876. (See also Wilcox v. Nixon, 115 La. 47, 38 So. 890 and Mann v. Mann, 170 La. 958, 129 So. 543.) * * *”
With the general rule, as set forth in Article 39, supra, and the exception thereto, long recognized by the jurisprudence of this state, in mind, we will now address ourselves to the facts as developed on the trial of the exceptions.
The testimony adduced on trial of this exception establishes that decedent was married to her husband for 52 years; that the husband resided in Abita Springs, St. Tammany Parish, for many years; and that the family home was there. The inventory of property decedent owned in St. Tammany Parish, exclusively, included her one-half interest in community property, including a residence and lot of ground and household furnishings. It further appears that from 1954 to 1959, decedent resided continuously with the niece, Mrs. Illeen Bloccher in Jefferson Parish, and that prior to that, for an undetermined period of time, she resided in a residence owned jointly with her brothers and sisters in Orleans Parish; that on several occasions, decedent went to Abita Springs. The testimony also shows, and quite significantly we think, that whenever Mr. Koerkel came to New Orleans, he always would visit his wife and would occupy the same bedroom with her. This occurred as late as a short while before her death. It appears that she became ill in 1957, and during her terminal illness in 1959, Mr. Koerkel came to New Orleans and stayed as long as three weeks and helped to take care of her during this time. It was shown that *693 decedent qualified as a registered voter in Orleans Parish in 1954, qualified in St. Tammany in 1955, and voted during that time in St. Tammany Parish, and was reinstated as a voter in Orleans Parish in 1956, and voted there as late as 1958. Mr. Koerkel denied ever giving his wife any cause to leave him, explaining that she went to live with her niece in order to help take care of the niece’s children.
While it is shown that decedent and her husband did not maintain the usual conjugal relationship that is ordinarily and customarily maintained between husband and wife, the record is devoid of any evidence that the surviving husband was guilty of misconduct or ill treatment towards his wife, or that he had abandoned her. In fact, the contrary is shown by the actions of the parties; by decedent receiving her husband in her place of residence for periods of time upwards to three weeks; by occupying the same bedroom with him; by her visits to Abita Springs; by his attention to her during her last illness; and by attending the wake and her funeral.
 In the absence of proof that opponent, Max Koerkel, had either abandoned his wife, or had been guilty of such misconduct or ill treatment towards her as to render their living together insupportable, the general rule stated in LSA-C.C. Article 39, quoted supra, is held to apply. The burden rests on petitioner, Mrs. Illeen Bloecher, to prove that decedent had the ■capacity to establish a domicile separate or ■different from that of her husband. This burden of proof has not been discharged by petitioner.
We find that decedent, Mrs. Elizabeth Kieran, did not have the legal capacity to establish a domicile separate from that ■of her husband in St. Tammany Parish, and that she had no other domicile than that of her husband.
Therefore, we find that the Orleans Parish District Court is without jurisdiction, and the judgment of the lower court overruling the exception to the jurisdiction is reversed. Likewise, the judgment declaring the last will and testament of decedent to be duly proved is annulled and set aside for lack of jurisdiction of the trial court. Appellee to pay all court costs.
Reversed.