174 So.2d 213 (1965)
Succession of Elizabeth Kieran KOERKEL.
No. 6384.
Court of Appeal of Louisiana, First Circuit.
April 12, 1965.
*214 Morris B. Phillips, New Orleans, for appellant.
Rodrigue & Edwards, Covington, Richard K. Simoneaux, New Orleans, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
The present appeal is by the opponent of the will of decedent Elizabeth Kieran Koerkel from the judgment of the trial court permitting introduction of extrinsic evidence to establish the certainty of date of said decedent's olographic last will and testament and admitting same to probate.
Decedent's demise occurred October 23, 1959, in Orleans Parish. Thereafter decedent's niece, Illeen Bloecher Dellinger, presented to the Civil District Court, Orleans Parish, and petitioned for the probate thereof as decedent's last will and testament, *215 a document written entirely in the handwriting and purporting to be the olographic last will and testament of decedent naming the aforesaid proponent as executrix and universal legatee of the alleged testatrix. Max Koerkel, decedent's surviving spouse, excepted to the jurisdiction of the Orleans Parish Court on the ground decedent was domiciled in another parish. The District Court, Orleans Parish, overruled opponent's exception to the Court's jurisdiction and probated the will. Opponent then appealed to the Court of Appeal, Fourth Circuit, which tribunal overruled the judgment of the District Court upon the finding decedent was in fact domiciled in St. Tammany Parish at the time of her death. (See Succession of Koerkel, La.App., 144 So.2d 690.)
Upon finality of the judgment of the Court of Appeal, Fourth Circuit, annulling the probate of decedent's will in the District Court, Orleans Parish, decedent's aforesaid surviving spouse, alleging the existence of the reputed will but simultaneously asserting its invalidity for lack of formal requisites, opened decedent's succession in St. Tammany Parish as an intestate succession, and applied for appointment as administrator.
Subsequently on November 19, 1963, Mrs. Dellinger intervened in the succession proceedings filed in St. Tammany Parish, presenting the purported will and praying for its probate therein. On the same day, opposition to the will was filed by Alvin J. Koerkel, alleging the death of Max Koerkel on March 4, 1963, and further averring said opponent to be the universal legatee and executor of the already probated will of Max Koerkel, deceased, and in such capacity, entitled to inherit the estate of decedent Elizabeth Kieran Koerkel considering decedents Max and Elizabeth Kieran Koerkel left no surviving ascendants or descendants and Max Koerkel therefore inherited the estate of his predeceased spouse.
In essence the present opposition is based on the contention that the testament lacks a proper date and therefore does not comply with the provisions of LSA-C.C. Article 1588 which requires that an olographic last will and testament be "entirely written, dated and signed by the hand of the testator."
The purported testament is dated "August 17" followed by the figures "19" and two additional and unintelligible ciphers which the proponent contends represent the figures "51". On this basis Mrs. Dellinger argues the year of the date line is "1951". Proponent offered extrinsic evidence to "assist the Court in ascertaining the certainty of the date", and our learned brother below admitted same over opponent's objection. In this regard we note the record itself does not contain the objection, but counsel for both parties concede the objection was timely made, and the trial court's reasons for judgment appearing in the record substantiate introduction of such evidence notwithstanding opponent's objection that extrinsic evidence is inadmissible to cure a defect in the form of an olographic last will and testament.
In his reasons for judgment, our learned brother below noted that the jurisprudence on the question at issue is somewhat uncertain. Believing, however, an exception exists with regard to specimens of the testator's handwriting since "such evidence does not tend to explain anything, and certainly could not alter or change the will in any way," he ruled the extrinsic evidence admissible, citing Succession of Wenling, 172 La. 673, 135 So. 21, as authority for the exception to the rule against admission of extrinsic evidence in matters pertaining to probate of testaments.
Before proceeding to a discussion of the jurisprudence on the point at issue, we note judicial expressions of dissatisfaction with the strict application of technical rules governing formality of wills. We particularly note the obiter dicta of our brothers of the Fourth Circuit in the recent three Judge panel decision rendered in Succession of Mayer, La.App., 144 So.2d 896, in which *216 our learned colleague, Judge Hardy, as organ of the Court admittedly indulges in "a gratuitous elaboration of what we think would be a more justified, though contrary, determination." The opinion in Succession of Mayer, supra, suggests that LSA-C.C. Article 1588 requires only that the instrument be dated, and imposes no requirement of certainty as to date. However, recognizing the issue to be settled by the Supreme Court in Succession of Beird, 145 La. 756, 82 So. 881, 6 A.L.R. 1452, and reaffirmed in Succession of Mutin, 232 La. 416, 94 So.2d 420, our brothers of the Fourth circuit held extrinsic evidence inadmissible to establish the date of a slash dated testament. The aforesaid panel opinion of the Court of Appeal, Fourth Circuit, is in apparent agreement with the three judge panel of this court which decided Succession of Gaudin, La.App., 140 So.2d 384, wherein the view was expressed that uncertainty of date should invalidate a will only where the date is of factual importance such as where there is more than one will, or the capacity of the testator (LSA-C.C. Articles 1475-1478), or the caducity or revocation of the testament (e. g. LSA-C.C. Articles 1696, 1705) may depend upon the date of confection.
However appealing this liberal view may first appear, and notwithstanding any inclination of our own to concur therein, we nevertheless are cognizant that we must decide the issue in the light of certain pronouncements of our own Supreme Court which we acknowledge to be binding upon us. If any principle in this most vexatious field of law is settled by the jurisprudence, it is the rule that if any part of the date appearing on an instrument purporting to be an olographic testament is doubtful or uncertain, whether as to the day, month or year, the effect of the incertitude or doubt about the date is the same as if the instrument bore no date at all. Succession of Curtis, 149 La. 487, 89 So. 629; Succession of Wenling, 172 La. 673, 135 So. 21; Succession of Mutin, 232 La. 416, 94 So.2d 420. We hasten to add, however, that this question is quite distinct from the more unsettled problem whether such certainty must appear independently of any extrinsic explanation or elaboration, because, as we appreciate the jurisprudence, those cases which permit introduction of extrinsic evidence do so solely for the purpose of establishing the certainty of the date.
Whether the requirement of a certain date is illogical in those instances wherein the precise date of the testament is of no relative importance, is not, we believe, a proper subject for judicial consideration inasmuch as the formal requirements of the various types of will established by the legislature are to some degree patently arbitrary and must be rigidly adhered to in all cases even when the legislative reason therefor is not readily evident. The legislature, possessing the power to impose such conditions as it may see fit, respecting the form and manner of transferring property mortis causa, need not declare the reasons for its requirements so long as they contravene no applicable constitutional concept. A requirement valid on its face and violative of no provision of constitutional law is binding upon the courts who are powerless to inquire into the reasonableness thereof. Irrespective of the illogicality attending the requirement, under the circumstances shown, the courts are bound to enforce the provision, the irrationality thereof being a matter solely within the legislative discretion.
The question of admissibility of extrinsic evidence to establish with certainty or explain the date of a testament offered for probate, has been most often raised in those instances wherein the testator has undertaken to express the date in figures rather than in writing, including "figures punctuated with virgules", commonly known today as "slash-dates", and figures punctuated with periods.
In Succession of Beird, 145 La. 756, 82 So. 881, the Supreme Court was confronted with a "slash-date" olographic will dated *217 "9/8/18." The Court expressly held such a date uncertain and insufficient. In also holding extrinsic evidence inadmissible to determine the testator's intention in so expressing the date of his will, the court stated:
"* * * we have uniformly applied the rule of strict interpretation to wills, and to be valid, in the language of the Code, they `must be entirely written, dated and signed in the hand of the testator.' It is hardly necessary to mention the reasons for this strictness, especially as to date, considering, as we must, that a person has the right to make as many wills as he chooses, and that the last, under the law, at least in so far as it may conflict with prior ones, has the effect of revoking their dispositions. The date, therefore, must be certain and beyond speculation."
In determining the slash-date ambiguous and uncertain, the court in Succession of Beird, supra, so concluded on the ground that a variance in custom and usage existed with regard to the order of designating the day and month when dating an instrument by the "slash-date" method. Subsequent to the decision in Succession of Beird, supra, this Court recognized the binding effect of the cited decision and upon its authority held invalid, for lack of date a will dated "12.10.1934.". Succession of Lasseigne, La.App. 181 So. 879. This court, however, in Succession of Gaudin, 98 So.2d 711 (sometimes hereinafter referred to as "the first Succession of Gaudin"), specifically overruled its holding in Succession of Lasseigne, supra, notwithstanding the contrary pronouncements of the Supreme Court in Succession of Beird, supra, and Succession of Mutin, 232 La. 416, 94 So.2d 420, which latter authority reaffirmed the ruling in Succession of Beird, supra, and preceded the decision in the first Succession of Gaudin, supra.
In the first Succession of Gaudin, supra, this court reasoned that Succession of Kron, 172 La. 666, 135 So. 19, overruled Succession of Beird, supra, insofar as the latter authority required that certainty as to century be present in the date of an olographic last will and testament. In the first Succession of Gaudin this court concluded the Supreme Court admitted extrinsic evidence to explain an otherwise uncertain date. In so holding we now discern we were in error. Upon reconsideration of Succession of Kron, supra, we note the ruling therein did not express the view that extrinsic evidence is admissible to establish an uncertain date but rather the Supreme Court reached its decision by applying the presumption of death after a century of life. The court, considering the will dated "January 11th/27" and the date of the testator's demise, January 25, 1927, applied the legal presumption of death after 100 years of life and concluded the will must be legally deemed written within the century preceding the testator's death. On this premise the Court concluded the will was dated January 11, 1927, because to hold the will dated January 11, 1827, would be to determine, contrary to the applicable presumption, that decedent was more than 100 years old at his death. We now conclude Succession of Kron, supra, in fact affirms the decision of Succession of Beird, supra, which held extrinsic evidence inadmissible to establish the date of an olographic testament.
We have herein previously noted that our brothers of the Fourth Circuit recognize Succession of Beird as still being the law of this state. See Succession of Mayer, 144 So.2d 896.
In Succession of Gaudin, 140 So.2d 384 (sometimes hereinafter referred to as "the second Succession of Gaudin"), a three judge panel of this Court, with Judge Miller as the organ of the Court, in a well reasoned opinion, reaffirmed the rule of admissibility of extrinsic evidence to explain the date intended by a slash-dated will. The late Judge Herget wrote an equally scholarly dissent and the Supreme Court granted certiorari. Unfortunately, however, the *218 matter was voluntarily withdrawn and the case was never considered by the Supreme Court. One of the points made in the second Succession of Gaudin, supra, was that the inconsistent customs prevailing at the time of Succession of Beird with respect to slash dates have now become consistent and uniform in this state. Cited in support of this conclusion is the statement of a Tulane Law Review Student Editor to the effect that "it has now become sufficiently settled in Louisiana that the digits before the first virgule represents (sic) the month." Assuming the correctness of the aforesaid unsupported statement, we fail to see wherein it solves the problem respecting admissibility of extrinsic evidence. If slash dates have now become certain extrinsic evidence is unnecessary to explain the testator's intention and any evidence offered in explanation thereof would be vulnerable to an objection of inadmissibility based on the premise that a date certain cannot be altered by extrinsic evidence which tends to show the intention of testator to be contrary to the plain and unequivocal terms of the will itself.
Assuming arguendo, slash-dates are now considered certain, we are herein confronted with the issue whether extrinsic evidence is admissible in cases of uncertainty not involving a slash-date. Because of this distinction we need not attempt to reconcile the jurisprudence regarding slash-dates except insofar as it may affect the case presently before us.
Some of the jurisprudential confusion and obscurity has resulted from the rules applicable to surcharges or alterations of the date on an ologaphic will. It has been held that where surcharged letters and figures substituted by testator himself are clear and certain, the validity of the will is not affected thereby. Succession of Wenling, 172 La. 673, 135 So. 21; Succession of Reynolds, 224 La. 975, 71 So.2d 537. However, should the testator make a surcharge rendering the date uncertain, the will is thereby invalidated. Succession of Buck, 208 La. 556, 23 So.2d 215.
It would appear the case resulting in the most confusion is that of Succession of Lefort, 139 La. 51, 71 So. 215, wherein the date written "May 26, 19", was followed by some blurred figures which appeared to be "08" and "13" written over each other and an attempt had been made to erase the "08" and "13" leaving a soiled and indistinct figure which was undecipherable. The aforesaid figures were followed by the figures "1913" in distinct numerals. The court found the following questions to be answered: (1) Were the figures "1913" written by the testatrix?; (2) Did a hand other than that of testatrix superimpose the figures "08" over the numerals "13"?; and (3) Were the numerals "13" in the handwriting of testatrix? Since all questions involved only the identity of the inscriber of the figures in question, extrinsic evidence was permitted to prove whether testatrix had made the surcharge over her own previous writing or whether the surcharge was made by the hand of a stranger to the testament.
The rationale of the Lefort case, supra, admitting extrinsic evidence was soundly based on the well recognized and established principle that the identity of the writer and authenticity of the testator's handwriting is so basically fundamental to the validity of an olographic testament that extrinsic evidence is admissible to prove that the purported testament was in fact entirely written, dated and signed in the handwriting of the testator. In this respect the holding in the Lefort case, supra, is eminently correct. Unfortunately, however, the case contains obiter dictum which has on occasion been quoted, rather recently by this Court and criticized and repudiated by the Supreme Court. This dictum, based on the maxim "Id certum est quod certum reddi potest" (That is certain which can be made certain) which first maintains a distinction exists between a document without a date and one with an *219 uncertain date, and that there is no law prohibiting courts from receiving evidence which explains an obscure date. The dictum then concludes that if evidence introduced fails to establish the certainty of the date, then the testament is invalid for lack of a date. As stated in the Lefort case, supra. "An uncertain date is therefore a date which cannot be made certain."
We note that Succession of Lefort, supra, was rendered by a majority of three with two justices dissenting. Charles A. O'Niell, then Associate Justice, was a litigant in the suit and therefore recused.
Justice Provosty, in his dissent, foresaw an uncertain future for the majority view and issued the following admonition:
"On several law points essential to a decision in this case, the views of two of the justices and of the justice ad hoc are opposed to those of two of the other justices, which are being advocated by Justice O'NIELL as a litigant. If the three latter justices adhere to their said views, as they are likely to do, and any one of the said points should come up again for decision while the court is constituted of the present incumbents, the decision in this case is sure to be overruled."
The aforesaid prediction contained in Justice Provosty's dissent was partially fulfilled in the ensuing Succession of McCay, 166 La. 681, 117 So. 772, wherein the authorities cited in Succession of Lefort were approved insofar as concerns the general law relative to surcharges. In the McCay case, supra, the dateline of the olographic will bore the numerals indicating the year "1923" the last digit of which "3" was surcharged with a "5". There was no contention of forgery or the surcharge having been made by a person other than the testator. The Court held that a will postdated by the testator through a surcharge is valid provided the surcharged date may be read distinctly and distinguished as the true date. The gratuitous language of the Lefort case, which indicated that extrinsic evidence may be resorted to in order to ascertain the testator's intention as to date, was repudiated by the following language appearing in Succession of McCay, supra:
"* * * extrinsic evidence as to date cannot be received. Neither a superscription of date on an envelope containing an olographic will, nor dispositions made in the will itself, can be resorted to as showing the intention of the testator as to date, if omitted from or not clearly appearing on the face of the testament."
The court then admitted testimony of handwriting experts to establish that the date of the will was plainly 1925 with the rather enigmatic statement that "such testimony is not properly expert testimony, nor is it properly extrinsic evidence." However, the Court itself was convinced from its own observation and examination of the document that the superimposed "5" was darker, heavier, clearer and more distinct than the figure "3" which was only partially visible and somewhat obliterated.
We understand Succession of McCay, supra, to be authority for the principle that the testimony of handwriting experts is admissible for the purpose of determining which figure was superimposed on the other where a surcharge is made by the testator. The holding, however, appears somewhat weakened by the court's finding, independently of expert testimony, that the precise year date of the testament was readily and immediately apparent on initial view of the will itself.
In Succession of Wenling, 172 La. 673, 135 So. 21, a surcharge, resulting in an uncertain digit in the year, was proved to have been made in the handwriting of the testator. The trial court, apparently without objection, permitted witnesses to examine the date and testify what year it appeared to designate. Some of the witnesses testified the last digit was too uncertain *220 to fix the year date with preciseness. The Court concluded:
"* * * An examination of the document without and under a magnifying glass convinces us that if the last digit of the date be a nine, the figure does not resemble the peculiar nine the deceased is shown to have consistently made throughout his life. Neither our own independent scrutiny of the will nor the testimony in the record has enabled us to ascertain with a reasonable degree of certainty whether or not the date of the will be 1923, 1928 or 1929."
After citing some of the dictum in Succession of Lefort and finding that the evidence adduced failed to resolve the uncertainty as to date, the Court, in the Wenling case, supra, declared the purported will invalid.
In Succession of Mutin, 232 La. 416, 94 So.2d 420, it was contended evidence was admissible to establish the intent of testatrix with respect to the date of the will. In disposing adversely of said argument, the Supreme Court stated:
"Counsel are mistaken. The cited observations from the Lefort case, which were pure obiter dicta as that case involved a surcharge, or superimposition of figures in the year date of the will, have been criticized and found to be incorrect in the latter decisions of the Court, although the ruling as to surcharges has been many times approved.
"Since we hold that evidence was inadmissible to establish the date of the will intended by the testatrix, we proceed to a determination of whether the date, as written, is so uncertain that the testament must be held invalid for failure to comply with the form prescribed by law."
The testament involved in Succession of Mutin, supra, was dated "Feb. 2/9/54." The Supreme Court held it was error to permit introduction of testimony in support of the contention that the will was executed February 9, 1954, and that the abbreviation "Feb." was written on the date line after the will had been completed to signify that the numeral "2", contained in the date, represented the month the will was written. In so concluding, the Supreme Court stated:
"If an olographic will is undated or contains an uncertain date, its nullity results from a vice of form. Hence, it matters not whether the testator intended a particular date or not as extrinsic evidence cannot cure the defect. An uncertain date is the equivalent of no date at all and the sufficiency and certainty of the date must be determined from the face of the will." (Cases cited.) (Emphasis by that Court.)
However, it should be noted that in Succession of Mutin, supra, the validity of the will was maintained on the ground that the date "Feb. 2/9/54" was subject only to a single interpretation because, to conclude the date expressed meant February 2, 1954, the figure "9" included therein must be completely disregarded whereas, to hold that it meant February 9, 1954, required merely the finding that the figure "2" was simply a repetition of the month.
Our review of the decision rendered in Succession of Gaudin, 140 So.2d 384, discloses that the court therein determined the affirmation by the Supreme Court of the trial court's judgment in Succession of Mutin, supra, upholding the validity of the will involved in that case to be a distinguishing feature. In the second Succession of Gaudin, supra, it was further concluded that the ruling in the Mutin case prohibiting introduction of extrinsic evidence was unnecessary to the disposition of the issues presented thereby creating the obvious implication said pronouncement is to be considered obiter dictum. We believe, however, that, as pointed out by the late *221 Judge Herget in his dissenting opinion, the aforesaid conclusion of the majority overlooks the fact that in Succession of Mutin, the Supreme Court squarely held extrinsic evidence was not admissible to prove the certainty of the date of an olographic will. The question was presented by the appellant who contended the trial court erred in admitting the evidence. The Supreme Court agreed and in the hereinabove quoted language from the Mutin case, in effect reversed the trial court's ruling upon the opponent's objection to introduction of evidence. Under the circumstances we do not consider the cited language dicta but a ruling by the Supreme Court on a matter squarely presented to it inasmuch as the opponent had specifically complained of error on the part of the trial court in admitting the evidence. The Court then proceeded to determine the certainty of date from the face of the document and concluded the date, as expressed, was intended to be February 9, 1954.
As previously shown, in Succession of Mutin, the Supreme Court again repudiated the obiter dictum of Succession of Lefort, supra, while at the same time approving the decision in Succession of Lefort with respect to the question actually presented, namely, whether extrinsic evidence was admissible to prove who had altered the date of the will by surcharge.
In the instant case, the third digit in the year indicating the decade is uncertain. Counsel for appellee maintains it is a "5" without the "cap" or horizontal bar at the top. Our careful consideration of the document in question reveals it could also be a "2" without a base, or an incomplete "3", or an incomplete "0", or an incomplete "8". (The latter, of course, can be eliminated from consideration for obvious reasons.)
Proponent sought to prove that this figure was a "5" by introduction of certain slips of paper on which decedent purportedly wrote figures tending to show that on occasion decedent, when making the numeral "5" would make said number with a small "cap", a detached "cap" or eliminated the "cap" altogether. In addition proponent, to prove the obscure third digit was a "5" introduced a marriage certificate showing her marriage to Cecil Robert Dellinger on January 8, 1944, on which basis it is contended the digit representing the decade has to be a "5" instead of a "3" because decedent could not have referred to proponent legatee by her married name until after proponent's marriage in 1944.
Unfortunately for proponent the obvious force of the aforesaid argument is completely negated and destroyed by the jurisprudence established by the Supreme Court prohibiting introduction of extrinsic evidence to resolve any obscurity existing in the expressed date of an olographic will.
The remaining numeral of the dateline indicating the precise year of the decade is undecipherable. It was written so near the right hand margin of the document that a portion of the digit runs off the page. Appellee maintains the final digit was intended to be the numeral "1", but our careful examination reveals it does not resemble either the first digit "1" indicating the millemium, or the first digit of the date "17th." It could perhaps be an imperfect "0". We may assume, however, it is not the letter "p". (See Succession of Lefort, 139 La. 51, 71 So. 215, wherein a digit resembling the letter "G" was held to be a "6" on the ground that testators are presumed to use numerals, not letters, in completing a date.) It could also be a "1" surcharge over a "0" or vice versa.
The date of decedent's purported olographic will being obscure, vague and uncertain and extrinsic evidence being inadmissible to resolve its dubiety, it follows that the judgment of the trial court admitting such evidence and declaring said will valid is erroneous and must be reversed.
Accordingly, it is hereby ordered, adjudged and decreed that the purported olographic last will and testament of decedent Elizabeth Kieran Koerkel, tendered for *222 probate by appellee Illeen Bloecher Dellinger, be and the same is hereby declared invalid for lack of a certain date and this matter remanded to the Honorable Twenty-second Judicial District Court, St. Tammany Parish, for further proceedings consistent with the views herein expressed. Pursuant to the authority contained in LSA-C.C.P. Article 2825, all costs in these proceedings to date, including costs of the instant appeal are assessed against the mass of decedent's estate.
Reversed and remanded.